UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| CITY OF NEW BOSTON, TEXAS, individually and on behalf all others similarly situated, | § § § § | CIVIL ACTION NO._____ |
| Plaintiff, | § § | |
| v. | § § | Hon. Judge Robert W. Schroeder III |
| NETFLIX, INC., and HULU, LLC, | § § § | |
| Defendants. | § § § § | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COMES NOW Plaintiff, City of New Boston, Texas, individually and on behalf of all others similarly situated (the "Class," as more fully defined below), and files this Original Class Action Complaint against Defendants Netflix, Inc. and Hulu, LLC (collectively "Defendants"), alleging as follows:

## INTRODUCTION

1. Defendants provide video service in Texas municipalities. When doing so, they use wireline facilities (*i.e.*, broadband wireline facilities) located at least in part in public rights-of-way.

2. Accordingly, Defendants should be and are required by law to pay each of those municipalities a franchise fee of 5% percent of their gross revenue, as derived from their providing video service in that municipality.

3. Defendants have failed to pay the required fee, necessitating this lawsuit, and entitling Plaintiff and the putative class to the relief requested herein.

## PARTIES

4. Plaintiff, City of New Boston, Texas is a lawfully existing Texas municipal corporation located in Bowie County, Texas.

5. Defendant Netflix, Inc. ("Netflix") is a Delaware corporation, headquartered in Los Gatos, California. Netflix's primary businesses are its video service, which offers online streaming of a library of films and television programs, as well as the distribution and production of original films and television series. Netflix does business in New Boston, Texas, and has done so at all times relevant to this action.

6. Defendant Hulu, LLC ("Hulu") is a Delaware limited liability company, headquartered in Santa Monica, California. Hulu's primary businesses are its video service, which offers online streaming of live video programming and a library of films and television programs, as well as the distribution and production of original films and television series. Hulu does business in New Boston, Texas, and has done so at all times relevant to this action.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendants are citizens of a state different from that of Plaintiff, the putative class size is greater than 100, and the aggregate amount in controversy for the proposed Class exceeds $5,000,000.00, exclusive of interest and costs.

8. Venue is proper in this District, and this Court has personal jurisdiction over Defendants, pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b), because a substantial part

of the events giving rise to the claims occurred in this District, and because Defendants "transact affairs" in this District; each Defendant continuously and systematically engaged in and continues to engage in business in this District.

## FACTUAL ALLEGATIONS

9. Defendants provide video service to their subscribers to view television shows, movies, documentaries, and other programming.[1] They compete with other video service providers,[2] offering video programming[3] that is comparable to that provided by cable companies and television-broadcast stations.

10. Customers view Netflix's and Hulu's video programming—such as television shows, movies, and documentaries—using an Internet-connected device. Internet-connected devices are electronic devices that have software enabling them to stream Defendants' video programming, including smart televisions, streaming media players like Roku or Apple TV, smartphones, tablets, video game consoles, set-top boxes from cable and satellite providers, Blu-ray players, and personal computers.

11. When a subscriber wants to watch Netflix or Hulu, he or she uses an Internet-connected device to send a request to the Internet-service provider. The Internet-service provider then forwards that request to Netflix's and Hulu's dedicated Internet servers, which, in turn,

---

[1] "Video service" means video programming services provided through wireline facilities located at least in part in the public right-of-way without regard to delivery technology, including Internet protocol technology. This definition does not include any video service provided by a commercial mobile service provider as defined in 47 USC § 332(d). *See* Tex. Util. Code Ann. § 66.002(10).

[2] "Video service provider" means a video programming distributor that distributes video programming services through wireline facilities located at least in part in the public right-of-way without regard to delivery technology. This term does not include a cable service provider. *See* Tex. Util. Code Ann. § 66.002(11).

[3] "Video programming" means programming provided by, or generally considered comparable to programming provided by, a television broadcast station, as set forth in 47 U.S.C. Section 522(20). *See* Tex. Util. Code Ann. § 66.002(9).

provide a response.  This response is then relayed back to the subscriber's device, and Netflix and Hulu deliver the video programming via Internet protocol technology (*i.e.*, broadband wireline facilities located at least in part in public rights-of-way).

12. During the relevant time period, Netflix has used a content delivery network called Netflix Open Connect to deliver 100% of its video traffic to its subscribers.  When a Netflix subscriber wants to view Netflix programming, the subscriber's Internet service provider will connect the subscriber to the closest Netflix Open Connect server offering the fastest speeds and best video quality.

13. According to Netflix, that means that most of its subscribers receive Netflix's video programming from servers either inside of, or directly connected to, the subscriber's Internet service provider's network within their local region.  Netflix has "end-to-end" control of its entire Open Connect system, including any servers located in New Boston and other Texas municipalities.

14. Similar to Netflix, when a Hulu subscriber wants to view Hulu, the subscriber's Internet service provider will connect the subscriber to the Hulu server.  Hulu receives the directive and checks the subscriber's entitlement, the location, and the content availability.  It then delivers the program through the Internet to the subscriber's Internet-connected device.

15. Defendants' subscribers typically use a broadband Internet connection, such as DSL or fiber optic cable to receive Defendants' programming.  In New Boston, common providers include Vyve Broadband.  These broadband Internet connections rely upon wireline facilities located in whole or in part in the public right(s)-of-way to deliver Internet service to subscribers.  That means that Defendants operate and provide their video service to Defendants' subscribers through wireline facilities located at least in part in the public right-of-way.

16. As video service providers, Defendants were required to file an application with the Public Utility Commission of Texas for a state-issued certificate of franchise authority ("SICFA") prior to providing video service. *See* Tex. Util. Code Ann. § 66.003.

17. Defendants failed to apply for and obtain a SICFA, and are, therefore, providing video service throughout Texas without authorization, and in contravention of the Texas Utility Code.

18. A SICFA would have authorized video service providers such as Defendants to use public rights-of-way, as long as said video service provider makes a quarterly franchise payment to each city in which it provides service. The required franchise payment must be equal to 5% of gross revenues (as the term is defined in Chapter 66), received by the franchise holder from the provision of services in that city. *See* Tex. Util. Code Ann. § 66.005.

19. Defendants were required to obtain a SICFA before providing video service in New Boston, and the other Texas municipalities in which it provides they provide their video services. Defendants' failure to obtain a SICFA, however, did not relieve Defendants of the obligation to pay a franchise fee of 5% of their gross revenues[4], as derived from providing such video service in those municipalities. *See* Tex. Util. Code Ann. § 66.005(a).

20. Defendants have failed to comply with § 66.005(a) because they have failed to pay Plaintiff and the other Class members the required franchise fee of 5% of gross revenues.

21. Plaintiff New Boston, individually and on behalf of other Texas municipalities, seeks to require Defendants to abide by the Texas Utilities Code, and pay what they owe to these municipalities.

---

[4] 66.002(6)(A) "Gross revenues" means all consideration of any kind or nature including without limitation cash, credits, property, and in-kind contributions (services or goods) derived by the holder of a state-issued certificate of franchise authority from the operation of the cable service provider's or the video service provider's network to provide cable service or video service within the municipality. *See* Tex. Util. Code Ann. § 66.002(6)(A).

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

> **All Texas municipalities in which one or more of the Defendants has provided video service (the "Class").**

23. Excluded from the Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

24. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

25. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The proposed Class is sufficiently numerous that individual joinder of all Class members is impracticable. Indeed, the Class size is believed to be in excess of two hundred municipalities. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

26. **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

   a. Whether Defendants provide video service, as defined by Tex. Util. Code Ann. § 66.002(10), within Plaintiff's and the other Class members' geographic areas;

   b. Whether Defendants are video service providers, as defined by Tex. Util. Code Ann. § 66.002(11);

   c. Whether Defendants were required to file an application with the Public Utility Commission of Texas for a state-issued certificate of franchise authority;

  d. Whether Defendants have failed to pay franchise fees pursuant to Tex. Util. Code Ann. § 66.005(a);

  e. The appropriate measure of damages to award Plaintiff and the other Class members; and

  f. The appropriate declaratory relief to which Plaintiff and the other Class members are entitled.

27. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and each of the other Class members is entitled to franchise fee payments from Defendants pursuant to Tex. Util. Code Ann. § 66.005(a), and Defendants have failed to pay Plaintiff and each of the other Class members those franchise fees. Plaintiff is asserting the same claims and legal theories individually and on behalf of the other Class members.

28. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members who it seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where defendants breached statutory obligations, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and its counsel.

29. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below, with respect to the Class members.

30. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy,

and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I
### VIOLATION OF TEXAS UTILITIES CODE § 66.005(a)

31. Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1-30, as if fully set forth herein.

32. Defendants provide video service, and are video service providers, in New Boston and each municipality comprising the Class. *See* Tex. Util. Code Ann. § 66.002(10)(11). Defendants derive gross revenues from providing these video services.

33. Defendants are thus required, by statute, to pay each municipality in which they provide video service, a franchise fee of 5% of their gross revenues derived from their operations in that municipality. *See* Tex. Util. Code Ann. § 66.005(a). Failure to obtain the required state-issued certificate of franchise authority does not excuse Defendants' obligation to make these payments.

34. Defendants have failed to comply with § 66.005(a) because they have failed to pay Plaintiff and the other Class members the required 5% of gross revenues.

35. A municipality can sue over a dispute concerning payment of the 5% fee. Tex. Util. Code Ann. § 66.005(b).

36. Plaintiff and the other Class members are, therefore, entitled to damages as a result of Defendants' violations of Tex. Util. Code Ann. § 66.005(a), along with pre- and post-judgment interest, in an amount to be determined at trial.

## COUNT II
## DECLARATORY JUDGMENT ACT

37. Plaintiff repeats, realleges, and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein, and further alleges, in addition and/or in the alternative, as follows.

38. This case involves an actual controversy of sufficient immediacy, which is substantial and concrete, touches upon the legal relations of parties with adverse interests, and is subject to specific relief through a decree of conclusive character.

39. Pursuant to 28 U.S.C. §§ 2201-2202, Plaintiff seeks a declaration, and resulting order, from the Court that:

   a. Each Defendant provides "video service," as that term is defined in the Texas Utilities Code. *See* Tex. Util. Code Ann. § 66.002(10);

   b. Each Defendant is a "video service provider," as that term is defined in the Texas Utilities Code. *See* Tex. Util. Code Ann. § 66.002(11);

   c. Defendants provide video service, and are video service providers, in New Boston and each municipality in the Class. *See* Tex. Util. Code Ann. § 66.002(10)(11);

   d. Defendants were required to file an application with the Public Utility Commission of Texas for a state-issued certificate of franchise authority ("SICFA"). *See* Tex. Util. Code Ann. § 66.003;

   e. Defendants are required to pay Plaintiff and each of the other Class members a franchise fee of 5% of their gross revenues derived from their operations in each such municipality, pursuant to Tex. Util. Code Ann. § 66.005(a); and

   f. Defendants have failed to comply with Tex. Util. Code Ann. § 66.005(a), because they have each failed to pay to Plaintiff and each of the other Class members the required 5% of gross revenues.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a. Enter an Order certifying the above-defined Class and designating Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

b. Award all monetary relief to which Plaintiff and the other Class members are entitled, including as set forth in Count I above;

c. Grant declaratory relief as set forth in Count II above, including ordering Defendants to cure their noncompliance with Tex. Util. Code Ann. § 66.005(a);

d. Award pre- and post-judgment interest;

e. Award reasonable attorneys' fees and costs to Plaintiff's counsel; and

f. Grant such further and other relief as this Court deems appropriate.

Dated:  August 11, 2020

        Respectfully submitted,

        **NIX PATTERSON, LLP**

        By: */s/ Austin Tighe*
        Austin Tighe
        Texas Bar No. 20023900
        atighe@nixlaw.com
        Michael Angelovich
        Texas Bar No. 00785666
        mangelovich@nixlaw.com
        3600 N. Capital of Texas Hwy.
        Bldg. B, Suite 350
        Austin, TX 78746
        Telephone:  512.328.5333
        Facsimile:  512.328.5335

        C. Cary Patterson
        Texas State Bar No. 1558700
        2900 St. Michael Drive
        5th Floor
        Texarkana, Texas 75503
        Telephone:  903.223.3999

**LANGDON & DAVIS**

Kyle B. Davis
Texas  Bar No. 24031995
kdavis@ldatty.com
625 Sam Houston Drive
PO Box 1221
New Boston, TX 75570
Telephone:  903.628.5571
Fax:  903.628.5868

**BRUSTER PLLC**

Anthony K. Bruster
State Bar No. 24036280
akbruster@brusterpllc.com
680 North Carroll Avenue, Suite 110
Southlake, Texas 76092
Telephone:  817.601.9564

**DiCELLO LEVITT GUTZLER, LLC**

Adam J. Levitt
alevitt@dicellolevitt.com
Mark S. Hamill
mhamill@dicellolevitt.com
Brittany E. Hartwig
bhartwig@dicellolevitt.com
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312.214.7900

**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**

Peter Schneider
pschneider@schneiderwallace.com
3700 Buffalo Speedway, Ste. 1100
Houston, TX 77098
Phone:  713.338.2560
Fax: 866.505.8036

Todd M. Schneider
tschneider@schneiderwallace.com
Jason H. Kim
jkim@schneiderwallace.com
2000 Powell Street, Suite 1400

Emeryville, CA 94608
Phone:  415.421.7100
Fax: 415.421.7105