**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| CITY OF NEW BOSTON, TEXAS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 5:20-cv-00135-RWS |
| v. | |
| NETFLIX, INC. and HULU, LLC, | |
| Defendants. | |

**DEFENDANT NETFLIX, INC.'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ...................................................................1

II.   BACKGROUND ......................................................................................2

      A.    The Netflix Streaming Service.................................................................2

      B.    Delivery of Content................................................................................3

      C.    The Texas Video Services Providers Act .................................................5

III.  STATEMENT OF ISSUES ......................................................................7

IV.   RULE 12(B)(6) STANDARD ..................................................................7

V.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ...............................8

      A.    THE TEXAS VIDEO SERVICES PROVIDERS ACT DOES NOT
            APPLY TO NETFLIX.............................................................................8

            1.    Netflix Does Not Provide Video Programming Comparable to
                  Programming Provided by a Television Broadcast Station. ........................8

            2.    Netflix Does Not Own or Operate a Video Services Network in the
                  Public Right-of-Way. ...................................................................9

            3.    Even if Netflix Held a Franchise Certificate, it Would Not Owe
                  Franchise Fees............................................................................11

      B.    Federal Law Preempts State and Local Attempts To Impose Franchise
            Fees on Netflix...................................................................................11

            1.    The Text and Structure of the Communications Act Make Clear
                  That Franchise Fees May be Imposed *Only* for the Provision of
                  "Cable Services." .......................................................................12

            2.    Binding Federal Communication Commision Precedent Further
                  Confirms that Franchise Fees Based on the Provision of Non-Cable
                  Services are Preempted. ..............................................................13

      C.    THE ACT VIOLATES THE INTERNET TAX FREEDOM ACT'S
            PROHIBITION ON DISCRIMINATORY TREATMENT OF
            E-COMMERCE.................................................................................15

      D.    THE TEXAS ACT VIOLATES THE FIRST AMENDMENT............................18

i

      1.      As Applied, the Texas Act Unconstitutionally Discriminates Between Mobile and Wireline Video Providers. ......................................19

      2.      As Applied, the Texas Act is Unconstitutionally Vague. ..........................20

      3.      Plaintiff Unconstitutionally Attempts to Enforce Utilities Code the Texas Act Against Just *Two* Speakers in This Action. .............................21

E.      IN THE ALTERNATIVE, THIS COURT SHOULD REFER THE CASE TO THE PUC UNDER THE PRIMARY JURISDICTION DOCTRINE. ...........22

VI.      CONCLUSION...............................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ark. Writers Project v. Ragland*,
481 U.S. 221 (1986) .......................................................................................18, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................7

*AT&T Communications of the Southwest, Inc. v. City of Austin, Tex.*,
40 F. Supp. 2d 852 (W.D. Tex. 1998), *vacated as moot*, 235 F.3d 241 (5th Cir.
2000) .........................................................................................................................10

*Chartis Specialty Ins. Co. v. Tesoro Corp.*,
930 F. Supp. 2d 653 (W.D. Tex. 2013) ...................................................................7

*Citizens United v. FCC*,
558 U.S. 310 (2010) ................................................................................................18

*City of Eugene v. Comcast of Oregon II*,
375 P.3d 446 (Or. 2016) .........................................................................................14

*City of New York v. FCC*,
486 U.S. 57 (1988) ..................................................................................................13

*City of Portland v. FCC*,
969 F.3d 1020 (9th Cir. 2020) ...............................................................................14

*Comcast of Maine/New Hampshire, Inc. v. Mills*,
435 F. Supp. 3d 228 (D. Me. 2019) .......................................................................20

*Cox Commc'ns Hampton Rds., LLC v. King*,
No. (Civil) CL19-3711, 2020 BL 314240 (Va. Cir. Ct. Aug. 14, 2020) ...............16

*EBS Sols., Inc. v. Hegar*,
601 S.W.3d 744 (Tex. 2020) ..................................................................................22

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) ..........................................................................................13, 14

*Fried v. Sensia Salon, Inc.*,
No. 4:13-CV-00312, 2013 WL 6195483 (S.D. Tex. Nov. 27, 2013) .....................23

*Gentile v. State Bar of Nev.*,
501 U.S. 1030 (1991) ..............................................................................................21

*Grynberg v. BP P.L.C.*,
    855 F. Supp. 2d 625 (S.D. Tex. 2012) ..................................................................7

*Jefferson v. Lead Indus. Ass'n, Inc.*,
    106 F.3d 1245 (5th Cir. 1997) ...........................................................................8

*Kentucky v. Netflix, Inc.*,
    No. 15-CI-01117 (Ky. Cir. Ct. Aug. 23, 2016).......................................3, 5, 8, 9, 10

*NAACP v. Button*,
    371 U.S. 415 (1963)...............................................................................19, 21

*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998)...............................................................................18, 21

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018)...........................................................................18, 22

*Neinast v. Texas*,
    217 F.3d 275 (5th Cir. 2000) ......................................................................16

*Penny v. Sw. Bell Tel. Co.*,
    906 F.2d 183 (5th Cir. 1990) ......................................................................23

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983)................................................................................18, 22

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)..............................................................................19, 22

*Reiter v. Cooper*,
    507 U.S. 258 (1993)..................................................................................24

*San Juan Cellular Tel. Co. v. Pub. Serv. Commission of P.R.*,
    967 F.2d 683 (1st Cir. 1992) ......................................................................16

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)..........................................................................18, 20, 22

*South Carolina v. Block*,
    717 F.2d 874 (4th Cir. 1983) ......................................................................16

*In re Sw. Bell Tel. Co.*,
    226 S.W.3d 400 (Tex. 2007).......................................................................23

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994)..............................................................................19, 22

*United States v. Davis*,
   139 S. Ct. 2319 (2019) ...................................................................................22

*Valero Terrestrial Corp. v. Caffrey*,
   205 F.3d 130 (4th Cir. 2000) ........................................................................16

## STATUTES AND REGULATIONS

28 U.S.C. § 1341 ..............................................................................................16

47 U.S.C.
   § 151 (note), § 1101(a)(2) .......................................................................... 15
   § 151 (note), § 1105(2)(A) ..........................................................................17
   § 151 (note), § 1105(8)(B) ..........................................................................16
   § 151 (note), § 1105(3) ............................................................................... 15
   § 332(c)(1)(C) .............................................................................................18
   § 521 ...........................................................................................................12
   § 541 ....................................................................................................11, 13
   § 541(a)(2) ..................................................................................................12
   § 542 ..........................................................................................11, 16, 17
   § 542(b) .......................................................................................................12
   § 542(g) .......................................................................................................12
   § 556(c) ..............................................................................................11, 13, 14
   § 1302 .........................................................................................................14

47 C.F.R.
   § 73.3999(b) ..................................................................................................8
   § 73.670(a) ....................................................................................................8

110 Stat 56 Sec. 303 .......................................................................................13

Tex. Util. Code

§ 66.001.................................................................................................6
§ 66.002(2)...........................................................................................12
§ 66.002(5).........................................................................6, 9, 10, 23
§ 66.002(6)...........................................................................................11
§ 66.002(6)(A)......................................................................................19
§ 66.002(6)(B)(iv)................................................................................12
§ 66.002(6)(C).......................................................................................9
§ 66.002(8)............................................................................................6
§ 66.002(9).........................................................................................6, 8
§ 66.002(10)......................................................................................6, 19
§ 66.002(11).........................................................................................19
§ 66.003................................................................................................6
§ 66.003(a)............................................................................................6
§ 66.005.....................................................................................6, 12, 23
§ 66.005(a)................................................................................11, 16, 19
§ 66.016(b)...........................................................................................12

## ADMINISTRATIVE DECISIONS

*In re Commc'ns Marketplace Report*,
FCC 18-181, 2018 WL 683936 (Dec. 26, 2018) ...................................4

Declaratory Ruling, Report and Order, and Order, *Restoring Internet Freedom*,
33 FCC Rcd. 311 (2018), *vacated in part in Mozilla Corp. v. FCC*, 940 F.3d 1
(D.C. Cir. 2019) .............................................................................5, 10

Eighteenth Report, *In The Matter Of Annual Assessment Of The Status Of
Competition In The Market For The Delivery Of Video Programming*,
32 FCC Rcd. 568 (2017).................................................3, 4, 5, 9, 21

Notice of Proposed Rulemaking, *In the Matter of Promoting Innovation &
Competition in the Provision of Multichannel Video Programming
Distribution Servs.*, 29 FCC Rcd. 15995 (2014)..................................... 9

Report and Order, *In the Matter of Implementation of Section 621(a)(1) of the
Cable Commc'ns Policy Act of 1984 As Amended by the Cable Television
Consumer Prot. & Competition Act of 1992*, 22 FCC Rcd. 5101 (2007),
*petitions for review denied in All. for Cmty. Media v. FCC*,
529 F.3d 763 (6th Cir. 2008) .......................................................5, 13, 17

Report and Order, *In the Matter of Preserving the Open Internet*,
25 FCC Rcd. 17905 (2010), *vacated in part in Verizon v. FCC*, 740 F.3d 623
(D.C. Cir. 2014) .....................................................................................19

Seventeenth Report, *Annual Report and Analysis of Competitive Market
Conditions With Respect to Mobile Wireless, Including Commercial Mobile
Services*, 29 FCC Rcd. 15311 (2014).....................................................17

Third Report and Order, *In the Matter of Implementation of Section 621(a)(1) of the Cable Commc'ns Policy Act of 1984 As Amended by the Cable Television Consumer Prot. & Competition Act of 1992*, 34 FCC Rcd. 6844 (2019) ...........................................................................................13, 14, 15

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend I. ..................................................................................................18, 19, 21

U.S. Const. art. VI, cl. 2............................................................................................................15

Defendant Netflix, Inc. ("Netflix") respectfully moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss each and every claim Plaintiff City of New Boston asserts in Plaintiff's Original Class Action Complaint.  (Dkt. No. 1).  Pursuant to Local Rule CV-7(g), Netflix requests oral argument and respectfully submits this memorandum of law in support of its Motion to Dismiss.

## I.  PRELIMINARY STATEMENT

Although this case is ostensibly about a "franchise fee" to compensate Texas cities for the use of their public rights-of-way, in reality it is an attempt to tax digital video content provided over the Internet in violation of state and federal law.  Plaintiff's attempt to drastically and impermissibly expand the scope of the Texas Video Services Providers Act (the "Texas Act") imposed on cable operators and telecommunications companies that use streets and poles in public rights-of-way to also include video *content* providers that do not, would have radical implications. Indeed, under Plaintiff's approach, every provider of Internet video content throughout the world would be required to apply for a franchise to provide video content to Texas consumers, and potentially would be subject to franchise fee taxation.  This sweeping expansion of a law that has been in place since 2005 would apply not only to subscription providers, such as Direct TV Now, CBS All Access, HBO Max, and ESPN, and transaction-based video providers, such as Amazon Prime Video and iTunes, but also to free video content providers, such as YouTube and TikTok. The language and structure of the Texas Act make clear that Texas did not intend that result, and even if it did, imposition of such a tax would violate federal law.

Plaintiff's request for a declaration from this Court that Netflix:  (1) provides "video services" and is a "video service provider" under the Texas Act; (2) was required to file an application with the Texas Public Utilities Commission for a state-issued franchise; and (3) was

required to, and failed to, pay Plaintiff a franchise fee is legally deficient, and must be dismissed, for several independent reasons:

- ***First***, the Texas Act does not apply to Netflix because it does not engage in activities requiring a franchise certificate, and even if Netflix did engage in such activities and hold a franchise, its revenues would not be subject to a franchise fee.

- ***Second,*** the imposition of state or local franchise fees on Netflix is inconsistent with, and preempted by, the Federal Communications Act of 1934, as amended, and long-standing Federal Communication Commission ("FCC") precedent.

- ***Third***, application of the Texas Video Services Providers Act to Netflix would violate the Internet Tax Freedom Act and the First Amendment to the United States Constitution.

- ***Finally***, under the primary jurisdiction doctrine, this Court should refrain from deciding this case, and instead refer the case to the Texas Public Utility Commission to determine in the first instance whether Netflix is required to obtain a franchise certificate and whether it must pay franchise fees.

These defects are apparent from the face of the complaint.  This Court therefore can and should dismiss this case with prejudice.

## II.     BACKGROUND

### A.      The Netflix Streaming Service

Netflix, which is headquartered in California, is a producer and distributor of on demand video content.  *See* Dkt. No. 1, ("Compl.") ¶ 10.  Netflix offers its subscribers online streaming access to a library of documentaries, feature films, and television series across a wide variety of genres and languages to viewers via the public Internet.  *Id.*  As of 2019, Netflix had more than 167 million paid streaming subscribers in more than 190 countries.

Netflix does not provide any live programming, such as sports, news, and award shows, nor does it provide "linear programming" by offering content on any predetermined or set schedule. *Kentucky v. Netflix, Inc.*, No. 15-CI-01117 (Ky. Cir. Ct. Aug. 23, 2016) at 6, attached as Exhibit 1.[1]  Rather, Netflix subscribers can watch as much as they want, anytime, anywhere, on any Internet-connected screen, all without commercials.

### B.    Delivery of Content

To access Netflix's library, subscribers must have both a personal device such as a computer or smart television,[2] and their own Internet connection.  Compl. ¶ 10.  When a Netflix subscriber wants to view Netflix programming, the subscriber's separate Internet provider will connect the subscriber to a Netflix server.   Compl. ¶ 11.   Netflix's subscribers must use a broadband Internet connection, such as cable broadband, fiber optic cable, or DSL, to receive Netflix's programming on a computer or smart television.  Compl. ¶ 15.  These wireline broadband Internet connections rely on facilities located in whole or in part in the Texas public right-of-way to deliver Internet service to subscribers.  Compl. ¶ 15.  Netflix content is also available to subscribers using smartphones and other mobile devices, in which case they also must supply their own Internet connection (i.e., from their cellular provider or a WiFi hotspot).  *See* Eighteenth Report, *In The Matter Of Annual Assessment Of The Status Of Competition In The Market For The Delivery Of Video Programming*, 32 FCC Rcd. 568 ¶ 128 (2017) ("Eighteenth Report").

---

[1] No court in Texas has addressed whether the Texas Act applies to Netflix.  The Kentucky Circuit Court (the only court that has addressed this issue in the context of a similar statute) held that Netflix was not subject to that state's Utility Gross Receipts license tax.

[2] A "smartphone" is a mobile phone that includes advanced functionality beyond making phone calls and sending text messages, and includes access to the Internet.  Similarly, while older televisions could only display content from an HDTV antenna, cable or other audio/visual source (such as a DVD player or VCR), smart TVs, much like smartphones, offer Internet connectivity and support for a range of applications.

Plaintiff does not allege that Netflix provides internet services, which are provided by third party Internet service providers ("ISPs").  *See generally,* Compl.  It does not.  There are more than 150 ISPs in Texas that provide Internet access services in one of several ways, including for example:  (1) "cable" broadband services, which rely on a combination of fiber optic and coaxial cable; (2) "fiber" or digital subscriber line ("DSL") connections provided by telephone companies over their landline networks; (3) "cellular," which provides wireless Internet access through cell towers and cell phones; (4) "fixed wireless" Internet, which uses microwave radio signals and specialized receivers; and (5) "satellite," which transmits Internet content between a satellite in Earth's orbit and earth stations.  Major ISPs in Texas include AT&T, Verizon, Comcast (Xfinity), and Charter (Spectrum).[3]

Plaintiff also does not allege that Netflix is a cable television company or a cable service provider.  *See generally,* Compl.  It is not.  Cable TV is a system for delivering programming to consumers via radio frequency signals transmitted through fiber optic and coaxial cables.  This contrasts with:  (1) broadcast television, in which the TV signal is transmitted over the air by radio waves and received by an antenna; and (2) satellite television, in which the TV signal is transmitted by a satellite and received by a satellite dish.  Large cable television companies operating in Texas include Comcast, Charter, and Cox Communications.  Eighteenth Report ¶ 18.

One feature that many ISPs and cable TV companies share is the need to establish networks of wires and other transmission and routing equipment to connect the computers, laptops, and

---

[3] *See In re Commc'ns Marketplace Report*, FCC 18-181 ¶¶ 6, 173 n.523, 174, 201, 2018 WL 683936 (Dec. 26, 2018) (analyzing competition among major ISPs); *AT&T home & business services in Texas*, AT&T, https://www.att.com/local/internet/texas (confirming Internet service coverage in Texas); *Your local internet service provider in Houston, TX*, Verizon, https://www.verizon.com/local/houston-tx/ (same); *Comcast Xfinity Service in Texas*, Xfinity, https://www.xfinity.com/locations/Texas/ (same); *Get the best deal on High Speed Internet Service in Texas*, Spectrum, https://www.spectrum.com/internet-service/texas (same).

televisions in people's homes and offices to servers and routers that host or transport the content requested or viewed by the consumer.  Not surprisingly, and similar to telephone wires and cables, many of these Internet and cable television networks need to be placed in a public right-of-way.

Plaintiff does not allege that Netflix owns any network or any portion of a network located in a Texas public right-of-way.  *See generally,* Compl.  It does not.  Netflix does not own any facilities or infrastructure capable of transmitting or otherwise delivering its streaming service to its subscribers. *Kentucky v. Netflix,* at 6-7.  To enhance its video speed and quality, Netflix uses a content delivery network ("CDN") called Open Connect to cache data closer to a consumer's geographical location, *see* Compl. ¶ 12; Eighteenth Report ¶ 137, but as the FCC has made clear, CDNs do *not* constitute or enable broadband Internet access service.  Declaratory Ruling, Report and Order, and Order, *Restoring Internet Freedom*, 33 FCC Rcd. 311, ¶ 190, 197, 201 (2018), *vacated in part on other grounds in Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019).  Instead, Netflix requires use of a third party ISP's broadband Internet access service to transmit its video content to subscribers.  *See* Eighteenth Report ¶ 1 n.4.

### C.    The Texas Video Services Providers Act

Federal law permits state and local governments to impose a "franchise fee [on cable operators] as the consideration given in exchange for the right to use the public ways."  Report and Order, *In the Matter of Implementation of Section 621(a)(1) of the Cable Commc'ns Policy Act of 1984 As Amended by the Cable Television Consumer Prot. & Competition Act of 1992*, 22 FCC Rcd. 5101, ¶ 135 (2007) ("First Section 621 Order"), *petitions for review denied in pertinent part*, *All. for Cmty. Media v. FCC*, 529 F.3d 763 (6th Cir. 2008).

Before 2005, cable television companies wishing to use a public right-of-way and provide service in Texas municipalities had to negotiate franchise agreements with each individual municipality.  In 2005, however, the Legislature enacted the Texas Video Services Providers Act,

Tex. Util. Code § 66.001 et. seq., pursuant to which it designated the Texas Public Utility Commission (the "PUC") as "the franchising authority for a state-issued franchise for the provision of cable service or video service."  Tex. Util. Code § 66.001.  Under the Texas Act, "an entity or person seeking to provide cable service or video service" must "file an application for a state-issued certificate of franchise authority with the [PUC.]"  *Id.* § 66.003.  The Texas Act defines "video service" as "video programming services provided through wireline facilities located at least in part in the public right-of-way without regard to delivery technology, including Internet protocol technology" excluding "any video service provided by a commercial mobile service provider as defined in 47 U.S.C. Section 332(d)."  *Id.* § 66.002(10).  "Video programming" is "programming provided by, or generally considered comparable to programming provided by, a television broadcast station, as set forth in 47 U.S.C. Section 522(20)."  *Id.* § 66.002(9).  The Texas Act also defines "public right-of-way" as "the area on, below, or above a public highway, street, public sidewalk, alley, waterway, or utility easement in which a municipality has an interest."  *Id.* § 66.002(8).

A "franchise" is "an authorization, issued by a franchising authority . . . that authorizes the construction and operation of a cable or video services network in the public rights-of-way."  *Id.* § 66.002(5).  Applications for a state-issued certificate of franchise authority ("franchise certificate") are filed with the Texas PUC.  *Id.* § 66.003(a).  Franchise certificate holders are required to make quarterly franchise payments in each municipality in which they provide services equal to 5% of "gross revenues" received by the franchise certificate holder from the provision of services in that municipality.  *Id.* § 66.005.  Netflix does not hold a franchise.  Compl. ¶ 17.

## III.    STATEMENT OF ISSUES

The issues to be decided in this Motion to Dismiss are:

A.    Whether the Texas Video Services Providers Act applies to Netflix;

B.    Whether the imposition of state or local franchise fees on Netflix is inconsistent with, and preempted by, the Federal Communications Act of 1934, as amended, and long-standing FCC precedent, which prohibit the imposition of franchise fees on over-the-top video providers such as Netflix;

C.    Whether application of the Texas Video Services Providers Act to Netflix would violate the Internet Tax Freedom Act because it discriminates against e-commerce;

D.    Whether the Texas Video Services Providers Act violates the First Amendment and Due Process Clauses of U.S. Constitution because it subjects only a certain, limited group of speakers to franchise fees; and

E.    Whether this Court should refer the case to the PUC under the primary jurisdiction doctrine.

## IV.    RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if a plaintiff fails to state a claim upon which relief can be granted.  *Grynberg v. BP P.L.C.*, 855 F. Supp. 2d 625, 639 (S.D. Tex. 2012).  While a court must accept as true all of the factual allegations contained in the complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 661 (W.D. Tex. 2013).   "[C]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice" to prevent dismissal.  *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997).

## V.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

### A.  THE TEXAS VIDEO SERVICES PROVIDERS ACT DOES NOT APPLY TO NETFLIX

#### 1.  Netflix Does Not Provide Video Programming Comparable to Programming Provided by a Television Broadcast Station.

The Texas Act defines "video programming" as "programming provided by, or generally considered comparable to programming provided by, a television broadcast station, as set forth in 47 U.S.C. Section 522(20)."  Tex. Util. Code § 66.002(9).  The defining characteristic of broadcast television, however, is that it provides only linear, scheduled content, with various programs each hour, and the content is clearly associated with the time slot and, some of which—like sports, news, etc.—is aired "live."  *Kentucky v. Netflix, Inc.*, at 6.  Television broadcast stations are also subject to a host of FCC regulations, including, for example:  (1) time restrictions on the broadcast of material that might be considered obscene, indecent or profane, *see, e.g.*, 47 C.F.R. § 73.3999(b); and (2) limitations on commercial programming during children's programing, *see, e.g.*, 47 C.F.R. § 73.670(a).[4]  Netflix, on the other hand, makes its content available fully on-demand, offers no live programming of any kind, and is not subject to FCC regulation.[5]

While no court in Texas has addressed whether Netflix provides "video programming," the Kentucky Circuit Court (the only court that has addressed this issue in the context of a streaming service) held, in analyzing a similar statute, that Netflix does not offer "programming provided by or generally considered comparable to programming provided by a broadcast television station."

---

[4] *See also*  https://www.fcc.gov/media/radio/public-and-broadcasting for a discussion of the FCC and examples of its regulatory authority.
[5] *See* https://www.fcc.gov/news-events/blog/2018/06/01/fcc-regulatory-free-arena.

*Kentucky v. Netflix*, at 6.  As that court observed, "it is unreasonable to conclude that Netflix's streaming service is generally considered comparable to traditional cable and broadcast television services: ***the two could not be more different***."  *Id*. at 15 (emphasis added).

### 2. Netflix Does Not Own or Operate a Video Services Network in the Public Right-of-Way.

Under the Texas Act, a holder of a franchise certificate is authorized to construct and operate "a cable or video services network in the public rights-of-way."  Tex. Util. Code § 66.002(5).  There is no dispute—and Plaintiff does not allege—that Netflix has not constructed, and does not operate a "cable or video services network" (let alone in a public right-of way).  As a result, Netflix is not required to apply for, and could not receive, a franchise certificate.

The Texas Act defines "network" to mean "the optical spectrum wavelengths, bandwidth, or other current or future technological capacity ***used*** for the ***transmission*** of video programming over wireline ***directly to subscribers*** within the geographic area within the municipality as designated by the provider in its franchise."  Tex. Util. Code § 66.002(6)(C) (emphasis added).[6] As described above, however, Netflix does not "transmit" content "directly to subscribers"—that transmission functionality is provided by the subscriber's Internet service provider ("ISP").  *See* Eighteenth Report ¶ 128 (explaining that content providers like Netflix are not "tied to the provider's own facilities-based infrastructure" and instead "cover all regions capable of receiving high-speed Internet service" from an ISP); *see also* Notice of Proposed Rulemaking, *In the Matter of Promoting Innovation & Competition in the Provision of Multichannel Video Programming Distribution Servs.*, 29 FCC Rcd. 15995 ¶¶ 17, 35 (2014) (recognizing that "many if not most

---

[6] The definition of "network" in the Texas Act is specific to the definition of "gross revenues", however, it is also applicable in the context of the definition of "franchise" because, as discussed in Section V.A.3., fees under the Act are only applied to gross revenues "derived by the holder of a state-issued certificate of franchise authority from the operation of the…video service provider's network to provide…video service within the municipality."  *Id.*

Internet-based distributors of video programming" do not own or operate facilities for delivering content to consumers, or otherwise make available a "transmission path" for their content). Netflix's consumers, using their own personal devices, connect to the Internet through their ISP and send requests to Netflix for particular pieces of content.  *See Kentucky v. Netflix*, at 12-13. The subscriber's ISP then relays that request to a Netflix Server, and Netflix delivers that content to the subscriber's ISP, which is responsible for delivering it to its customer's device.  *See id.*

While Plaintiff references Netflix's Open Connect system in its Complaint, it concedes that the ISP—not the Open Connect system—actually delivers content to Netflix's members.  Compl. ¶ 11.  The Open Connect system is, instead, a CDN that consists of servers that cache data closer to a consumer's geographical location, which, tellingly, Plaintiff does not allege exist in any public right-of-way, Compl. ¶ 12, and which do not—by definition—provide broadband Internet access service.  Declaratory Ruling, Report and Order, and Order, *Restoring Internet Freedom*, 33 FCC Rcd. 311, ¶ 190, 197, 201 (2018).  Any assertion by Plaintiff that Netflix's Open Connect system is "used" for the transmission of video programming over wireline directly to subscribers would therefore be "bizarre."  *AT&T Communications of the Southwest, Inc. v. City of Austin, Tex.*, 40 F. Supp. 2d 852, 855-56 (W.D. Tex. 1998) (rejecting as "bizarre" Austin's asserted right to impose right-of-way fees on AT&T by virtue of its electromagnetic radiation traveling through *another company's* local landline facilities), *vacated as moot*, 235 F.3d 241 (5th Cir. 2000).

The Netflix service is thus not a "video services network" as defined in the Texas Act as a matter of law.  As a result, Netflix is not required to (and could not) obtain a franchise certificate.  Tex. Util. Code § 66.002(5).  This factor alone is dispositive of Plaintiff's claim.

      **3.**      **Even if Netflix Held a Franchise Certificate, it Would Not Owe Franchise Fees.**

Even assuming, incorrectly, that Netflix was required to (or even could) apply for and receive a certificate of franchise authority in Texas, Netflix would still not be required to pay any franchise fees to Plaintiff or any other Texas municipality.  A holder of a certificate of franchise authority must pay each municipality in which it provides video service a franchise fee equal to five percent of the gross revenues derived from providing such services within the municipality. Tex. Util. Code § 66.005(a).  "Gross revenues" under the Texas Act encompass no more than the "***consideration … derived*** by the holder of a state-issued certificate of franchise authority ***from the operation of the … video service provider's network*** to provide … video service within the municipality." *Id.* § 66.002(6) (emphasis added).  As described above, Netflix does not operate a "network" under the Texas Act.  As a result, even if Netflix held a certificate of franchise authority, it would owe no fees to Plaintiff.

**B.**      **FEDERAL LAW PREEMPTS STATE AND LOCAL ATTEMPTS TO IMPOSE FRANCHISE FEES ON NETFLIX**

The Communications Act of 1934, as amended, 47 U.S.C. § 151 *et seq.* (the "Communications Act"), and the FCC's implementing orders confirm that:  (1) franchise fees are applicable only to video providers that deliver video programming via their own facilities deployed in the public rights-of-way (namely, cable operators); and (2) federal law preempts any contrary interpretation of the Texas Act that would extend franchise fee obligations to video content providers such as Netflix.

Federal law authorizes states and municipalities to impose "franchise fees" only within the terms of the federal framework, *see* 47 U.S.C. §§ 541, 542, which sets the boundaries of state and local franchising authority.  *See* 47 U.S.C. § 556(c) ("Except as provided in section 557 of this title, any provision of law of any State, political subdivision, or agency thereof, or franchising

authority, or any provision of any franchise granted by such authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded.").  The franchise fee regime created by the Texas Act exists within, and is limited by, the federal framework, both by virtue of the Supremacy Clause of the U.S. Constitution and under the terms of the Texas Act itself—which expressly incorporates terms from the Communications Act and FCC rules.  *See, e.g.*, Tex. Util. Code §§ 66.002(2) (incorporating federal definition of "Video programming"); 66.002(6)(B)(iv) (incorporating FCC "rules, regulations, standards, or orders"); § 66.016(b) (recognizing "express[] prohibit[ions]" on certain franchise payments "by federal law").  Indeed, the language of section 66.005 of the Texas Act, which imposes a five percent franchise fee on gross revenues as defined in the Act, draws directly from the federal franchise fee statute.  *See* 47 U.S.C. § 542(b) (authorizing imposition of "franchise fees" that "shall not exceed 5 percent of [a] cable operator's gross revenues").

1.   **The Text and Structure of the Communications Act Make Clear That Franchise Fees May be Imposed *Only* for the Provision of "Cable Services."**

Congress established the franchising framework in the Cable Communications Policy Act of 1984 ("1984 Cable Act," codified in Title VI of the Communications Act), which was intended to "establish franchise procedures and standards" to "encourage the growth and development of cable systems" while "assur[ing] that cable systems are responsive to the needs and interests of the local community."  47 U.S.C. § 521.  The franchise provisions in the 1984 Cable Act refer exclusively to cable operators, systems, and services.  *See, e.g.*, 47 U.S.C. §§ 542(g) (defining "franchise fee" as limited to "cable operator[s]"); 541(a)(2) (awarding a franchise "authorize[s] the construction of a cable system").  In the Telecommunications Act of 1996, Congress eliminated any ambiguity as to the limitations on state and local franchise fee authority, amending the first sentence of 47 U.S.C. § 542(b)—which under the Communications Act authorized franchise fees

of up to "5 percent of [a] cable operator's gross revenues derived in [a 12-month period] from the operation of the cable system"—to clarify that such revenues could be included only if they came from "the operation of the cable system *to provide cable services*." Sec. 303, 110 Stat 56 (emphasis added). These limitations preclude imposing franchise fees for the provision of *non-cable services*, and state and local attempts to impose fees for such services are preempted. *See* 47 U.S.C. § 556(c).

**2.      Binding Federal Communication Commission Precedent Further Confirms that Franchise Fees Based on the Provision of Non-Cable Services are Preempted.**

The Supreme Court has long recognized that "[f]ederal regulations have no less preemptive effect than federal statutes," *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982), and that "a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation and hence render unenforceable state or local laws that are otherwise not inconsistent with federal law," *City of New York v. FCC*, 486 U.S. 57, 63-64 (1988) (internal quotation marks omitted). Construing 47 U.S.C. § 541, the FCC has recognized that franchise fee authority is limited to "the provision of cable services over cable systems." First Section 621 Order ¶ 121. In the same order, the FCC specifically determined: "Local regulations that *attempt to regulate any non-cable services offered by video providers are preempted* because such regulation is beyond the scope of local franchising authority and is inconsistent with the definition of 'cable system' in Section 602(7)(C) [47 U.S.C. § 522(7)(C)]." *Id.* ¶ 122 (emphasis added).[7]

---

[7] Although the First Section 621 Order by its terms applied only to local franchise authorities, the FCC has subsequently clarified that the First Section 621 Order also applies to state actions and regulations. Third Report and Order, *In the Matter of Implementation of Section 621(a)(1) of the Cable Commc'ns Policy Act of 1984 As Amended by the Cable Television Consumer Prot. & Competition Act of 1992*, 34 FCC Rcd. 6844 ¶ 111 (2019) ("Third Section 621 Order").

More recently, the FCC has reaffirmed its broad preemption of state efforts to impose franchise fees by giving what is clearly a fee a different label.  After the Supreme Court of Oregon upheld a state "telecommunications" license fee on broadband services on the ground that it was not preempted by FCC regulations, *City of Eugene v. Comcast of Oregon II*, 375 P.3d 446, 459 (Or. 2016), the FCC repudiated that decision and ordered instead that such fees are preempted. Third Section 621 Order, 34 FCC Rcd. 6844 ¶ 80, 106; *see id.* ¶ 100 (47 U.S.C. § 556(c) "operates to preempt state and local requirements that would use non-Title VI authority to accomplish indirectly what franchising authorities are prohibited from doing directly.").  Just as a municipality may not evade the Communications Act restrictions on franchise fees by calling them something else, it may not extend franchise fees to entities that do not deploy cable systems in public rights-of-way without creating a conflict with—and thus being preempted by—federal law.

Construing Texas' franchise fee regime to cover Netflix's services would also interfere with important federal objectives promoting broadband deployment.  *See, e.g.*, *Fidelity Fed. Sav. & Loan Ass'n*, 458 U.S. at 153 (holding that a "state law [that] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of" a federal regulation is preempted).  Congress directed the FCC in Section 706 of the Telecommunications Act of 1996 to take action within its authority to promote broadband deployment.  47 U.S.C. § 1302.  More recently, the Ninth Circuit upheld the FCC's 2018 conclusion that excessive fees—and in particular fees that do not correspond to a "government's approximate costs" in managing public rights-of-way—unlawfully impede broadband deployment.  *See City of Portland v. FCC*, 969 F.3d 1020, 1035-36 (9th Cir. 2020).  As Netflix is a video content provider, not the operator of a cable system within the public rights-of-way, the Netflix service does not gives rise to any costs for any Texas municipality to recoup via a franchise fee.  *See generally* Third Section 621 Order, 34 FCC

Rcd. 6844 ¶ 84 ("Title VI establishes a framework that reflects the basic terms of a bargain—a cable operator may apply for and obtain a franchise to access and operate facilities in the local rights-of-way, and in exchange, a franchising authority may impose fees and other requirements as set forth and circumscribed in the Act.").  Nor does the Texas Act provide any other cost-based rationale to impose franchise fees on providers of over-the-top video.  Imposing a five percent fee on Netflix's revenues from video service—when Plaintiff does not even allege Netflix provides any facilities in the public rights-of-way—would chill demand for broadband Internet access services and in turn obstruct the vital federal policy of promoting broadband deployment.  To the extent Texas law authorizes imposing franchise fees on Netflix, it is therefore preempted.

### C.   THE ACT VIOLATES THE INTERNET TAX FREEDOM ACT'S PROHIBITION ON DISCRIMINATORY TREATMENT OF E-COMMERCE

The Supremacy Clause of the United States Constitution provides that federal laws are "the supreme law of the land; . . . any thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.  The Internet Tax Freedom Act ("ITFA") prohibits states and localities from implementing "discriminatory taxes on electronic commerce." 47 U.S.C. § 151 (note), § 1101(a)(2).  The Texas Act, particularly as applied to Netflix, directly conflicts with the ITFA.  Under the Supremacy Clause, therefore, Plaintiff's claims under the Texas Act must be dismissed.

The ITFA prohibits states and municipalities from enacting certain taxes on "electronic commerce," which, as relevant here, the ITFA defines as including the delivery of services over the Internet or through Internet Access, whether or not for consideration.  47 U.S.C. § 151 (note), § 1105(3).  Plaintiff alleges that Netflix "deliver[s] the video programming via Internet protocol

technology."   Compl. ¶ 11.[8]   As Plaintiff concedes that Netflix is engaged in "electronic commerce," its declaratory relief claim is preempted if the fee Plaintiff seeks to impose falls within the IFTA's definition of a "tax."

Taxes under ITFA include "any charge imposed by any governmental entity for the purpose of generating revenues for governmental purposes, and is not a fee imposed for a specific privilege, service, or benefit conferred."   *Id.* at § 1105(8).[9]   While states and localities often use the terms "tax" and "fee" interchangeably, courts look to the substance of the transaction:   "The classic fee is imposed:   (1) by an agency, not the legislature; (2) upon those it regulates, not the community as a whole; and (3) for the purpose of defraying regulatory costs, not simply for general revenue-raising purposes."   *Neinast v. Texas*, 217 F.3d 275, 277 (5th Cir. 2000) (citing *San Juan Cellular Tel. Co. v. Pub. Serv. Commission of P.R.*, 967 F.2d 683 (1st Cir. 1992)).[10]   Applying this definition, the franchise "fees" imposed by the Act are taxes, as they are not imposed or collected by any regulatory agency, but are instead imposed by an act of the state legislature and collected by municipalities for their general purposes,[11] and, particularly with respect to Netflix, the fee does

---

[8] As discussed above, Netflix does not concede that it delivers "video programming" under the Texas Act.
[9] 47 U.S.C. § 151 (note), § 1105(8)(B) excepts from the definition of "tax," "any franchise fee or similar fee imposed by a State or local franchising authority, pursuant to section 622 or 653 of the Communications Act of 1934 (47 U.S.C. 542, 573), or any other fee related to obligations or telecommunications carriers under the Communications Act of 1934 (47 U.S.C. 151 et seq.)."   Since the franchise fees provided for under the Act are not permitted under 47 U.S.C. 542, this exception does not apply.
[10] The analysis in *Neinast* centered on whether the charge was a "tax" under the Tax Injunction Act. 28 U.S.C. § 1341.   Its analysis is equally relevant for purposes of the ITFA.   *See Cox Commc'ns Hampton Rds., LLC v. King,* No. (Civil) CL19-3711, 2020 BL 314240, *4 (Va. Cir. Ct. Aug. 14, 2020) ("The Court concludes that Congress intended to incorporate a mutually exclusive interpretation of the words "tax" and "fee" into the ITFA, consistent with the TIA. While the text of the TIA, which has been in effect since 1948, does not include the word "fee," subsequent case law distinguishing between a tax and a fee under that statute has been in effect since well before the passage of the ITFA.)   *See also Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000) (citing *San Juan Cellular Telephone Co. v. Public Service Comm'n*, 967 F.2d 683 (1st Cir. 1992); *South Carolina v. Block*, 717 F.2d 874 (4th Cir. 1983))."

[11] Under the express terms of the Texas Act, all revenues flow with no restriction on their use to the cities, not the Commission, the state's regulatory agency. *See* Tex. Util. Code § 66.005(a) (holder of a SICFA "shall pay each municipality in which it provides cable service or video service"); Texas Municipal League, REVENUE MANUAL FOR TEXAS CITIES, ("The quarterly five-percent franchise fee can be

not convey any *specific* privilege, service, or benefit.  Netflix's content is delivered through an ISP, and thus the only privileges, services, or benefits conferred on Netflix are essentially the same as those that any other person that maintains a public website—the ability for their content to travel through the public right-of-way *by a third-party*.

Texas's franchise fee also violates the IFTA's prohibition on discriminatory taxes.  A "discriminatory tax" under the ITFA includes any tax that "is not generally imposed and legally collectible by such State or such political subdivision on transactions involving similar property, goods, services, or information accomplished through other means."  47 U.S.C. § 151 (note), § 1105(2)(A).  Plaintiff alleges that Netflix provides a service that is comparable to services provided by television broadcast stations.  Compl. ¶ 9.  Taking that allegation as true, Plaintiff must also acknowledge that both Netflix and television broadcast stations deliver content in similar ways— through the use of an intermediary (in the case of a television broadcast station, a cable or satellite company and in the case of Netflix, an ISP).  The franchise fee, however, cannot be imposed and legally collectible against television broadcast stations.  *See* 47 U.S.C. § 542; First Section 621 Order ¶¶ 121-122.  To impose the franchise fee on Netflix thus would discriminate against the Internet delivery of the Netflix service, which is expressly prohibited by the IFTA.

The Texas Act is also discriminatory because it specifically excludes "video service provided by a commercial mobile service provider, as defined in 47 U.S.C. Section 332(d)" from its definition of video service.  The term "commercial mobile service provider" under the Communications Act is understood to mean cellular data providers, for example, Verizon Wireless or AT&T.  *See, e.g.*, Seventeenth Report, *Annual Report and Analysis of Competitive Market Conditions With Respect to Mobile Wireless, Including Commercial Mobile Services*, 29 FCC Rcd.

---

spent in any manner a city council chooses.") https://www.tml.org/DocumentCenter/View/68/Texas-Municipal-League-Revenue-Manual-for-Texas-Cities-PDF.

15311 ¶¶ 2, 11-12, 22 (2014) (discussing Verizon, AT&T, and others in annual report on "competitive market conditions with respect to commercial mobile services" (quoting 47 U.S.C. § 332(c)(1)(C)).  As discussed below, the Texas Act also discriminates between video providers that distribute content solely over mobile broadband connections and video providers that distribute content over fixed and mobile connections, and thus violates the ITFA on a second ground.

### D.      THE TEXAS ACT VIOLATES THE FIRST AMENDMENT

Because imposing financial burdens on some speakers but not others "poses a particular danger of abuse by the States," *Ark. Writers Project v. Ragland*, 481 U.S. 221, 228 (1986), the First Amendment requires courts to be "deeply skeptical of laws that 'distinguis[h] among different speakers,'" *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2378 (2018) (alteration in original) (quoting *Citizens United v. FCC*, 558 U.S. 310, 340 (2010)).  As a result, "[w]hen speakers . . . are similarly situated, the State may not pick and choose." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 55 (1983); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011) (striking down state law that "disfavor[ed] specific speakers").  In addition, under the First Amendment and the Due Process Clause of the United States Constitution, "speakers are protected from arbitrary and discriminatory enforcement of vague standards." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998).  The Texas Act as applied violates these core constitutional principles in three ways, each independently requiring dismissal: (1) it treats video providers that deliver content using mobile connections differently from similarly situated providers that use wireline connections; (2) it is unconstitutionally vague and presents a substantial risk of arbitrary and discriminatory enforcement; and (3) it *actually does* single out just two speakers as applied in this action.  Plaintiff has not alleged *any* interest that would justify such speaker-based discrimination.  The Texas Act is thus plainly unconstitutional.

### 1.    As Applied, the Texas Act Unconstitutionally Discriminates Between Mobile and Wireline Video Providers.

The Texas Act imposes franchise fees based on gross revenues including subscriber fees for "video service," *see* Tex. Util. Code §§ 66.005(a), 66.002(6)(A), but not all video service providers are treated the same.  Most notably, the definition of "[v]ideo service" excludes "any video service ***provided by a commercial mobile service provider***."  *Id.* § 66.002(10) (emphasis added).[12]

Providers of video service "engage in and transmit speech" and are therefore speakers under the First Amendment.  *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 636 (1994) ("There can be no disagreement on an initial premise:  Cable programmers and cable operators engage in and transmit speech, and they are entitled to the protection of the speech and press provisions of the First Amendment."); Report and Order, *In the Matter of Preserving the Open Internet*, 25 FCC Rcd. 17905 ¶ 14 (2010) (recognizing that "[t]elevision and radio broadcasters now provide news and other information online via . . . online aggregation websites such as Hulu"), *vacated in part on other grounds in Verizon v. FCC*, 740 F.3d 623 (D.C. Cir. 2014).  Singling out video providers based upon the mechanism used to transmit content (wireline broadband connections versus mobile connections) thus triggers heightened scrutiny under the First Amendment.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 170 (2015) (laws that single out particular speakers "demand strict scrutiny when the legislature's speaker preference reflects a content preference"); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994) ("[L]aws that single out the press, or certain elements

---

[12] Similarly, the Texas Act's definition of "[v]ideo service provider" excludes "a cable service provider." *Id.* § 66.002(11).  To the extent Texas law would not impose a franchise fee on a cable service provider, even if it provided video services in the same way Netflix does (*i.e.* via third-party facilities rather than its own cable system), it further discriminates without providing a coherent rationale.  In any event, the vagueness of these provisions renders the City's actions here and the broader scheme constitutionally deficient, as discussed below.  *See generally NAACP v. Button*, 371 U.S. 415, 432 (1963) ("[S]tandards of permissible statutory vagueness are strict in the area of free expression.").

thereof, for special treatment . . . are *always* subject to at least some degree of heightened First Amendment scrutiny." (emphasis added)); *Comcast of Maine/New Hampshire, Inc. v. Mills*, 435 F. Supp. 3d 228, 248 (D. Me. 2019) (applying intermediate scrutiny to state law that treated cable operators differently from other types of video programming providers).

As applied in this action, the Texas Act unconstitutionally discriminates between video providers that distribute content solely over mobile broadband connections and video providers that distribute content over fixed and mobile connections.  Plaintiff does not allege—and cannot provide—any justification for granting preferential treatment to video providers that distribute content solely over mobile broadband connections.  Indeed, as Plaintiff does not allege that Netflix provides any facilities in the public rights-of-way—which makes it indistinguishable from video providers that distribute content over mobile broadband connections—it is difficult to imagine any conceivable justification.[13]  *See Comcast of Maine/New Hampshire, Inc.*, 435 F. Supp. 3d at 248-29 (preliminarily enjoining law that discriminated among speakers, citing government's failure to identify justification for discrimination in legislative record).  This Court should therefore dismiss Plaintiff's claims against Netflix as they seek to unconstitutionally discriminate against it.  *See Sorrell*, 564 U.S. at 564.

### 2.      As Applied, the Texas Act is Unconstitutionally Vague.

As applied in this action, the Texas Act also subjects speakers to the risk (and reality) of arbitrary and discriminatory enforcement in violation of constitutional vagueness principles.  For the reasons discussed above, this Court should hold that Netflix is not subject to the "franchise fee" regime set forth in the Texas Act based on the text and structure of the state statute.

---

[13] For an example of an "exclusively mobile" video service, see Joan E. Solsman, *Quibi: Everything to know about the $5 short-form video service*, CNET (June 28, 2020), https://www.cnet.com/news/quibi-everything-to-know-prices-shows-release-dates/.

Constitutional law compels the same result:  Applying the exceedingly broad interpretation of the Texas Act that the City advances in this action violates the First Amendment and Fourteenth Amendment's Due Process Clause, under which "speakers are protected from arbitrary and discriminatory enforcement of vague standards." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998).

In particular, the Texas Act imposes franchise fees on any video provider that "deliver[s] [] video programming via Internet protocol technology (i.e., broadband wireline facilities located at least in part in public rights-of-way)."  Compl. ¶ 11.  If the Act is interpreted to cover Netflix, as Plaintiff seeks, then it also would apply to virtually any video streamed by Texas consumers, including HBO Max, ESPN, Amazon Prime, and YouTube, despite the fact that none of these services operate any wireline facilities of their own.  *See generally* Eighteenth Report, *In The Matter Of Annual Assessment Of The Status Of Competition In The Market For The Delivery Of Video Programming*, 32 FCC Rcd. 568 ¶¶ 151-53 (2017) (noting that "[s]treaming video accounts for a large and growing percentage of total Internet traffic" and that "[t]he OVD [Online Video Distributor] marketplace continues to expand") and ¶ 132 (listing OVDs).  This sort of breadth and uncertainty is not permitted when states regulate speech and speakers, because vague laws touching on expression create an "impermissible risk of discriminatory enforcement." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1051 (1991); *see NAACP v. Button*, 371 U.S. 415, 432 (1963) ("[S]tandards of permissible statutory vagueness are strict in the area of free expression."); *Finley*, 524 U.S. at 588.

> **3.  Plaintiff Unconstitutionally Attempts to Enforce Utilities Code the Texas Act Against Just *Two* Speakers in This Action.**

The risk of discriminatory enforcement is not hypothetical in this case, as despite Plaintiff's exceedingly broad interpretation of the Texas Act, which would subject myriad video providers to

franchise fees, Plaintiff seeks to enforce the law only against Netflix and Hulu, exempting many of their principal competitors.  Governments, however, cannot constitutionally "pick and choose" among similarly situated speakers.  *Perry Educ. Ass'n*, 460 U.S. at 55; *see Nat'l Inst. of Family & Life Advocates*, 138 S. Ct. at 2378; *Sorrell*, 564 U.S. at 564; *Ragland*, 481 U.S. at 228.  Plaintiff has offered *no* justification for singling out these speakers for enforcement and deciding *not* to seek enforcement against any other streaming company, let alone other companies that in fact "deliver video programming via Internet protocol technology (i.e., broadband wireline facilities located at least in part in public rights-of-way)."  Compl. ¶ 11.  Plainitff has not and cannot meet the heightened scrutiny required by state action that discriminates among speakers.  *See Reed*, 576 U.S. at 170; *Turner Broad. Sys., Inc.*, 512 U.S. at 641.  Its actions are therefore unconstitutional.

* * *

Each of these constitutional deficiencies to the Texas Act, as applied in this action, independently requires dismissal of Plaintiff's complaint.  *See EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020) (because "we start with the presumption that statutes enacted by the Legislature comply with both the United States and Texas Constitutions, . . . if a statute is susceptible to two interpretations—one constitutional and the other unconstitutional—then the constitutional interpretation will prevail"); *United States v. Davis*, 139 S. Ct. 2319, 2332 n.6 (2019) (noting the longstanding principle that "courts should, if possible, interpret ambiguous statutes to avoid rendering them unconstitutional").

### E.   IN THE ALTERNATIVE, THIS COURT SHOULD REFER THE CASE TO THE PUC UNDER THE PRIMARY JURISDICTION DOCTRINE

If, despite all of the defects described above, this Court is nonetheless disinclined to dismiss Plaintiff's complaint in its entirety, under the doctrine of primary jurisdiction, this Court should refer the case to the PUC to determine in the first instance whether Netflix is required to obtain a

franchise certificate and whether it must pay franchise fees.  *See In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403-04 (Tex. 2007).  Primary jurisdiction applies where, as here, courts and agencies both have authority to make an initial determination in a dispute, and the doctrine permits a court in appropriate circumstances to refer the initial decision to the relevant agency.  *Id.* at 403.  The Texas Supreme Court has held that the Texas PUC is entitled to primary jurisdiction as to "problems within the agency's purview," *Id.* at 403, which undoubtedly include issues regarding franchise certificates and franchise fees.  Tex. Util. Code §§ 66.002(5); 66.005.  Because "[t]he PUC is staffed with experts who routinely consider" these sorts of issues, deference to their expertise is appropriate.  *In re Sw. Bell Tel. Co.* 226 S.W.3d at 403-04 (referring question regarding interpretation and enforceability of interconnection agreements to PUC under primary jurisdiction doctrine).  Deference under the primary jurisdiction doctrine is also warranted here because "great benefit is derived from the agency's uniform interpretation of laws within its purview and the agency's rules and regulations [since] courts and juries might reach differing results under similar fact situations."  *Id.*; *see also Penny v. Sw. Bell Tel. Co.*, 906 F.2d 183, 187 (5th Cir. 1990) (finding exercise of primary jurisdiction doctrine was "particularly appropriate because resolution of the case would be assisted by a primary determination from the [Texas] PUC" on an issue where "the PUC has specific authority . . . [and] is more accustomed to adjudicating this type of issue than is a federal district court").  These principles apply with greater force where, as here, a novel interpretation is advanced that would have far-reaching consequences.  *See In re Sw. Bell Tel. Co.*, 226 S.W.3d at 404 (analyzing possible consequences of determination, including "inhibit[ing] competition").  If this Court exercises the primary jurisdiction doctrine and refers the case to the Texas PUC, this Court "'has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.'"  *Fried v. Sensia Salon, Inc.*, No.

4:13-CV-00312, 2013 WL 6195483, at *2 (S.D. Tex. Nov. 27, 2013) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993)).  In this case, the Court should dismiss Plaintiff's complaint, because a determination that Netflix is not subject to the franchising requirements would be dispositive with respect to all of Plaintiff's allegations, and Plaintiff will suffer no prejudice while the matter is before the PUC.

## VI.    CONCLUSION

Plaintiff's attempt to drastically and impermissibly expand the scope of the Texas Video Services Providers Act to include video content providers like Netflix must fail as a matter of law. Netflix is simply not a video service provider subject to the Act.  Even if it were, imposition of state or local franchise fees on Netflix is inconsistent with, and preempted by the Federal Communication Act of 1933 and long-standing FCC precedent, violates the Internet Tax Freedom Act and is unconstitutional.  For all of these independent reasons, Plaintiff's complaint should be dismissed.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
Cole Alan Riddell
Texas Bar No. 24105423
HALTOM & DOAN
6500 Summerhill Road
Crown Executive Center Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: criddell@haltomdoan.com

Mary Rose Alexander
California Bar No. 143899
Robert C. Collins III (*pro hac vice*)
Illinois Bar No. 6304674
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: mary.rose.alexander@lw.com
Email: robert.collins@lw.com

Jean A. Pawlow (*pro hac vice*)
D.C. Bar No. 421782
LATHAM & WATKINS LLP
555 Eleventh Street, N.W. Suite 1000
Washington, DC 20004
Telephone: (202) 637-3331
Facsimile: (202) 637-2201
Email: jean.pawlow@lw.com

**ATTORNEYS FOR DEFENDANT
NETFLIX, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on October 2, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Jennifer H. Doan*
Jennifer H. Doan