IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| CITY OF NEW BOSTON, TEXAS, individually and on behalf all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>NETFLIX, INC., and HULU, LLC,<br><br>      Defendants. | Civil Action No.:  5:20-cv-00135-RWS |

**DEFENDANT HULU, LLC'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

      A.      Hulu ..............................................................................................................3

      B.      The Texas Public Utility Regulatory Act .....................................................3

      C.      City of New Boston ......................................................................................4

STATEMENT OF ISSUES ......................................................................................................5

ARGUMENT ............................................................................................................................5

      I.      HULU IS NOT REQUIRED TO PAY A SICFA FEE WHEN IT DOES NOT HOLD A STATE-ISSUED CERTIFICATE OF FRANCHISE AUTHORITY .................................................................................6

      II.      HULU DOES NOT NEED FRANCHISE AUTHORITY BECAUSE IT DOES NOT CONSTRUCT OR OPERATE IN THE PUBLIC RIGHTS-OF-WAY ................................................................................................8

      III.      PLAINTIFF'S ATTEMPT TO TAX THE STREAMING OF VIDEO PROGRAMMING VIA THE INTERNET RESULTS IN DISCRIMINATORY TAXATION AND VIOLATES THE INTERNET TAX FREEDOM ACT .........................................................10

CONCLUSION .......................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allstate Ins. Co. v. Hegar*,
    484 S.W.3d 611 (Tex. App. Austin 2016) ................................................................. 8

*BBX Operating, L.L.C., v. Bank of Am., N.A. (In re Connect Transp., L.L.C.)*,
    2020 U.S. App. LEXIS 25409 (5th Cir. Aug. 11, 2020) ............................................ 6

*Bell v. Bank of Am. Home Loan Servicing LP*,
    2012 U.S. Dist. LEXIS 21274 (S.D. Tex. Feb. 21, 2012) .......................................... 7

*Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist.*,
    555 S.W.3d 92 (Tex. 2018) ........................................................................................ 7

*City of New York v. Exxon Mobile Corp.* (*In re Methyl Tertiary Butyl Ether Prods.
    Liab. Litig.*),
    2009 U.S. Dist. LEXIS 59287 (S.D.N.Y. July 6, 2009) ............................................ 7

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (5th Cir. 1993) ..................................................................................... 5

*Gilmour v. Blue Cross & Blue Shield of Ala.*,
    2020 U.S. Dist. LEXIS 93771 (E.D. Tex. May 29, 2020) ......................................... 5

*Home Builders Ass'n v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) ................................................................................. 10

*Hurt v. Cooper*,
    130 Tex. 433, 110 S.W.2d 896 (Tex. 1937) ............................................................ 11

*MCI Commc'n Servs. v. City of Eugene*,
    359 Fed. App'x 692 (9th Cir. 2009) ........................................................................ 10

*Neinast v. Texas*,
    217 F.3d 275 (5th Cir. 2000) ................................................................................... 10

*Performance Mktg. Ass'n v. Hamer*,
    998 N.E.2d 54 (Ill. 2013) ......................................................................................... 11

*Ross v. Abbott*,
    2013 U.S. Dist. LEXIS 203997 (W.D. Tex. July 19, 2013) ...................................... 5

*In re Sw. Bell Tel. Co.*,
    226 S.W.3d 400 (Tex. 2007) ..................................................................................... 7

*Sw. Bell Tel. Co. v. City of El Paso*,
   346 F.3d 541 (5th Cir. 2003) ...................................................................................................7

*TracFone Wireless, Inc. v. Comm'n on State Emergency Comm'ns*,
   397 S.W.3d 173 (Tex. 2013)..................................................................................................11

## STATUTES

47 U.S.C.

§ 151 (note) § 1101(a)................................................................................................................10

§ 151 (note) § 1105(3) ................................................................................................................10

Tex. Util. Code

§ 11.002(a) ...................................................................................................................................4

§ 11.002(c) ...................................................................................................................................4

§ 66.001 ....................................................................................................................................4, 7

§ 66.002(5).........................................................................................................................2, 4, 8

§ 66.002(6)(A) .............................................................................................................................9

§ 66.002(8)...................................................................................................................................8

§ 66.002(9).................................................................................................................................12

§ 66.002(10)...............................................................................................................................12

§ 66.003 .......................................................................................................................................4

§ 66.003(c) ...................................................................................................................................6

§ 66.004 .......................................................................................................................................6

§ 66.005 .......................................................................................................................................4

§ 66.005(a) ....................................................................................................................1, 4, 6, 11

§ 66.005(c) ...................................................................................................................................4

§ 66.010 .......................................................................................................................................9

§ 66.011 .......................................................................................................................................9

§ 66.011 .......................................................................................................................................6

§ 66.015(a) ...................................................................................................................6

§ 1105(2)(A) ...............................................................................................................11

## OTHER AUTHORITIES

144 Cong. Rec. E1288-03 (daily ed. June 23, 1998) (statement of Rep. Cox), 144
    Cong. Rec. E1289, 1998 WL 391325 ....................................................................11

Texas Municipal League, Revenue Manual for Texas Cities,
    https://www.tml.org/DocumentCenter/View/68/ Texas-Municipal-League-
    Revenue-Manual-for-Texas-Cities-PD .................................................................11

Defendant Hulu, LLC ("Hulu") hereby moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss each and every claim that Plaintiff City of New Boston (the "City" or "New Boston") asserts in Plaintiff's Original Class Action Complaint (the "Complaint"). The Complaint should be dismissed because (1) the statutory fee only applies to holders of a state-issued certificate of franchise authority, which Hulu is not; (2) Hulu does not construct or operate a network on public rights-of-way and thus does not need franchise authority; and (3) the attempt to collect any franchise fee from Hulu but not television broadcasters or commercial mobile providers offering comparable video programming violates the Internet Tax Freedom Act, which forbids discriminatory taxes on electronic commerce. Hulu also joins in Netflix's arguments concerning preemption, the First Amendment, and primary jurisdiction.

Hulu requests that the Court dismiss with prejudice Counts I and II of the Complaint, as well as any further relief the Court deems just and proper. Hulu requests oral argument.

## INTRODUCTION

Plaintiff wants to collect a "franchise fee" from Hulu even though the statute authorizing the fee makes clear that the fee does not apply to Hulu. The Texas Public Utility Regulatory Act ("PURA") states that the holder of a "state-issued certificate of franchise authority"—also known as a "SICFA"—shall pay each municipality a fee. Tex. Util. Code Ann. § 66.005(a). The problem for Plaintiff, however, is that Hulu does not hold a SICFA, and it has never held one, sought one, or claimed to have one. Hulu is not required to pay for something it never received, and Plaintiff cannot collect a fee that the statute does not authorize.

That Hulu does not hold a SICFA is not an oversight. Hulu has no reason to obtain a SICFA, which "authorizes the construction and operation of a cable or video services network in the public rights-of-way." Util. § 66.002(5). Hulu has not constructed or operated such a

network, as the Complaint itself acknowledges. Rather, Hulu uses existing infrastructure that the residents of New Boston use to connect to the internet—whether it be Vyve Broadband (to use Plaintiff's own example), a cell phone provider, or something else. Compl. ¶¶ 11, 14-15. No special Hulu-specific network is needed to stream content. If a consumer can access the internet, they can watch videos on Hulu.

Plaintiff's attempt to collect this fee from Hulu represents a dramatic expansion of internet taxation. It transforms a "franchise fee" authorizing the construction and operation of network infrastructure into a quickly compounding internet use tax. While the PURA authorizes Hulu to pass on this fee to its subscribers, and thus the brunt of Plaintiff's new strategy will ultimately be inflicted on its own residents, Hulu cannot agree to pass on a fee that is plainly unauthorized and will wreak havoc on the internet. This lawsuit will inevitably be followed by similar demands on HBO Max, CBS All Access, Amazon Prime Video, TikTok, or any other video service a resident of New Boston may use. Residents would then have to pay an additional 5% SICFA fee for each service they use in addition to the subscription fees they already pay to services like Hulu or Netflix. The Legislature never contemplated such a result and it is hard to imagine New Boston residents would support the City's attempt to twist the PURA "franchise fee" into a toll they must pay every time they access the internet.

This not only violates the PURA—it also violates the federal Internet Tax Freedom Act ("ITFA"). New Boston does not collect franchise fees from over-the-air broadcasters or commercial mobile service providers even when they provide comparable video programming services. The attempt to collect the fee from internet streamers is thus prohibited discrimination.

In addition to these defects, Hulu also joins in Netflix's arguments that the claims are preempted by federal law, violate the First Amendment, and implicate primary jurisdiction

considerations.  For all of these reasons, Plaintiff's claims fail as a matter of law and any amendment will be futile.  Hulu requests that the claims be dismissed with prejudice.

## FACTUAL BACKGROUND

### A. Hulu

Hulu is a premium streaming service offering live and on-demand television and film to over 35 million subscribers, including subscribers in New Boston.  Hulu gives its subscribers access to current shows from every major U.S. broadcast network, as well as acclaimed Hulu Originals, in addition to live news, entertainment, and sports.  There are three tiers of monthly subscriptions: a straightforward option with subscription on-demand access to Hulu's library of more than 80,000 television episodes and films, an option with no commercials, and an option that also includes over 65 channels of live television.

To deliver its services, Hulu distributes video content to internet-connected devices, including computers, mobile devices, video game consoles, and televisions.  Compl. ¶ 10-11, 14-15.  Because subscribers use their own internet connections to stream Hulu's programming, Hulu simply transmits content through existing wireline facilities controlled and operated by internet service providers—Hulu does not control or operate the networks themselves.  *Id*. ¶ 17.  Furthermore, Hulu transmits the same content to its users, regardless of the specific channel through which each user accesses the internet.

### B. The Texas Public Utility Regulatory Act

In 2005, the Texas Legislature passed Senate Bill 5, which established a statewide franchise scheme for entities seeking to construct and operate cable and video services networks.  The bill allowed such entities to avoid the need to negotiate separate authorization from every municipality served by their networks.  Util. § 11.002(a) ("The purpose of this title is to establish

a comprehensive and adequate regulatory system for public utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the utilities.").

This bill added Chapter 66 to the PURA, Texas Utilities Code Ann. § 66.001, *et seq.*, which entrusts the Public Utility Commission of Texas (the "Commission") with overseeing this new regime. *See* Util. § 11.002(c) ("It is the purpose of this title to grant the Public Utility Commission of Texas authority to make and enforce rules necessary to protect customers of telecommunications and electric services consistent with the public interest."). Any entity may apply for a SICFA from the Commission. Util. § 66.003. The Commission reviews these applications, and, upon approval, will issue a SICFA, which authorizes franchises to construct and operate cable or video services in the public rights-of-way. Util. § 66.002(5).

Holders of a SICFA must pay to each city in which they construct or operate in the public rights-of-way "a franchise fee of five percent based upon [their] gross revenues" in that city. Util. §§ 66.005; 66.002(6)(A). Holders are also authorized to "recover from [their] customers any fee imposed by this chapter." Util. § 66.005(c).

C.      **City of New Boston**

Plaintiff is a city located in Bowie County, Texas. Compl. ¶ 4. Plaintiff filed the present Complaint on August 11, 2020 against Hulu and Netflix. The Complaint alleges a violation of Texas Utilities Code Section 66.005(a) and seeks a declaration of rights under the PURA. Plaintiff purports to bring this case on behalf of "[a]ll Texas municipalities in which one or more of the Defendants has provided video service." *Id.* ¶ 22.

Hulu does not hold a SICFA and the Complaint does not allege that it does. Before this Complaint, Plaintiff has never claimed that Hulu needed a SICFA or owes any fee for holding a

SICFA. Accordingly, Hulu has not to date collected such fees from residents of New Boston or any of its Texas consumers.

## STATEMENT OF ISSUES

I. Whether Hulu can be required to pay the "franchise fees" a holder of a SICFA must pay, even though Hulu does not hold a SICFA.

II. Whether Hulu is subject to the PURA franchising rules when it does not construct or operate its own cable or video services network in the public rights-of-way.

III. Whether taxing internet streaming but not over-the-air broadcasting or mobile cellular streaming violates ITFA's prohibition of discriminatory taxation.

## ARGUMENT

Rule 12(b)(6) provides an early mechanism to challenge the legal sufficiency of a claim. *Gilmour v. Blue Cross & Blue Shield of Ala.*, 2020 U.S. Dist. LEXIS 93771, at *33 (E.D. Tex. May 29, 2020). Although courts assume the well-pleaded factual allegations in a challenged pleading are true, courts are not required to accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ross v. Abbott*, 2013 U.S. Dist. LEXIS 203997, at *15-16 (W.D. Tex. July 19, 2013); *see Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (conclusory or legal conclusions will not prevent dismissal). Allegations that "merely parrot the words needed to create a claim without providing any factual basis" can be disregarded. *BBX Operating, L.L.C., v. Bank of Am., N.A. (In re Connect Transp., L.L.C.)*, 2020 U.S. App. LEXIS 25409, at *5 (5th Cir. Aug. 11, 2020).

### I. HULU IS NOT REQUIRED TO PAY A SICFA FEE WHEN IT DOES NOT HOLD A STATE-ISSUED CERTIFICATE OF FRANCHISE AUTHORITY.

Under the PURA, "[t]he holder of a state-issued certificate of franchise authority shall pay . . . a franchise fee." § 66.005(a). There is no dispute that Hulu is not a holder of a SICFA—Plaintiff concedes as much. *See* Compl. ¶ 17. This alone should end the case.

Holding a SICFA confers real privileges and benefits. *See* Util. § 66.003(c). It contains "a grant of authority to provide . . . video service[s]" and "a grant of authority to use and occupy the public rights-of-way" to deliver them. *Id.* § 66.003(c)(1)-(2). Holding a SICFA also limits the extent to which a municipality may interfere in a holder's operations. *Id.* § 66.011.

The PURA explicitly ties the payment of any fee to the holding of a SICFA. Indeed, the PURA recognizes that a SICFA is not the only way to obtain authorization to construct or operate in the public rights-of-way. *See* Util. § 66.004. Incumbent providers that have negotiated franchise agreements with individual cities do not need a SICFA. They can rely on municipal authorization, at least until those agreements expire. *Id.* These incumbents are not holders of a SICFA and thus do not owe the fee. The same should apply to any other provider that does not need state-issued authorization from the Commission.

In addition, the PURA provides that "[s]hould the holder of a state-issued certificate of franchise authority be found by a court of competent jurisdiction to be in noncompliance . . . the court shall order the holder . . . to cure such noncompliance." *See* Util. § 66.015(a). The failure to comply with a cure order "shall subject the holder . . . to penalties . . . ***up to and including revocation*** of the [SICFA]." *Id.* (emphasis added). When the ultimate sanction for non-compliance is the loss of a SICFA, it becomes clear that the holding of a SICFA is a defining element of the statutory regime and cannot be lightly excused, presumed, or overlooked.

Hulu does not hold a SICFA. As a result, it cannot claim any authority from the state to construct or operate in the public rights-of-way, and thus Plaintiff cannot collect the fee from Hulu. Whether a particular provider is required to obtain a SICFA is a matter solely determined by the Commission. Util. §§ 66.001 (designating Commission "as the franchising authority for a state-issued franchise"); 66.014(e) (empowering the Commission to make determinations as to "comparability of the technology and the service provided" and "monitor the deployment of cable services, video services, or alternate technology").

To the extent Plaintiff believes Hulu should obtain a SICFA, it must therefore raise its concerns with the Commission. Plaintiff has no authority to grant a SICFA, make its own determinations of who needs one, or waive the SICFA as a requirement. *See In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403-04 (Tex. 2007) (finding that the Texas PUC has primary jurisdiction over all "problems within the agency's purview"). Of course, any city retains its "police powers" as well as a variety of avenues for recourse under state law, including common law trespass claims, against entities allegedly "entering" the city's public rights-of-way without permission. *See, e.g., Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 549 n.25 (5th Cir. 2003); *City of New York v. Exxon Mobile Corp.* (*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.)*, 2009 U.S. Dist. LEXIS 59287, at *28-31 (S.D.N.Y. July 6, 2009).

But what a city cannot do is ignore the PURA and ask the court to rewrite it to produce its desired outcome. *See e.g.*, *Bell v. Bank of Am. Home Loan Servicing LP*, 2012 U.S. Dist. LEXIS 21274, at *23 (S.D. Tex. Feb. 21, 2012); *Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist.*, 555 S.W.3d 92, 94 (Tex. 2018) ("[W]hen interpreting a statute, the text is the alpha and the omega of the interpretive process."). In Texas, this principle guides the strict construction of statutes concerning taxation. *See Allstate Ins. Co. v. Hegar*, 484 S.W.3d 611,

616 (Tex. App. Austin 2016) ("While construction of tax statutes can be highly technical and laden with policy consequences, it remains fundamental that it is the language chosen by the Legislature that ultimately controls and that neither the Comptroller nor the courts may revise the [statute] in the guise of interpreting it."). Because Hulu is not a holder of a SICFA under the plain terms of the PURA, Plaintiff cannot collect a franchise fee from Hulu.

## II. HULU DOES NOT NEED FRANCHISE AUTHORITY BECAUSE IT DOES NOT CONSTRUCT OR OPERATE IN THE PUBLIC RIGHTS-OF-WAY.

The PURA defines "franchise" as "an initial authorization, or renewal of an authorization, issued by a franchising authority, regardless of whether the authorization is designated as a franchise, permit, license, resolution, contract, certificate, agreement, or otherwise, that authorizes the *construction and operation* of a cable or video services network in the *public rights-of-way*." Util. § 66.002(5) (emphasis added). A public right-of-way "means the area on, below, or above a public roadway, highway, street, public sidewalk, alley, waterway, or utility easement in which a municipality has an interest." Util. § 66.002(8).

Hulu neither constructs nor operates any network infrastructure in the public rights-of-way and the Complaint does not allege otherwise. Instead of constructing its own network, Hulu relies on existing infrastructure the residents of New Boston may use to access the internet. As the Complaint acknowledges, a Hulu subscriber "uses an Internet[ ] connected device to send a request to the Internet-service provider," which then "forwards that request to . . . Hulu's dedicated Internet servers." *Id*. ¶ 11. Hulu then delivers content "through the Internet to the subscriber's Internet-connected device." *Id*. ¶ 14. These "subscribers typically use a broadband internet connection, such as DSL or fiber optic cable to receive [Hulu's] programming." *Id*. ¶ 15. It is these non-party "broadband Internet connections" that "rely [on] wireline facilities" that occupy the public rights-of-way. *Id*. ¶ 15.

Other provisions of the PURA make clear that franchising authority is for constructing and operating a network—*i.e.*, the physical occupation of public rights-of-way.  For example, the nondiscrimination provision states that a city may not discriminate against franchises "regarding (1) the authorization or ***placement of a communications network in a public right-of-way***; (2) ***access to a building***; or (3) ***a municipal utility pole attachment term***."  Util. § 66.010 (emphasis added).  And each of the city's enumerated "police powers" specifically refer to construction and maintenance of physical infrastructure.  *See* Util. § 66.011 (for example, "a municipality may require the issuance of a ***construction permit***" and a franchise may take actions necessary to deliver its services, including beginning ***"repair or emergency response work***") (emphasis added)).  None of these provisions apply to an entity like Hulu, which has no physical network infrastructure that requires construction, ongoing access, or maintenance.

In addition, the PURA states that gross revenues shall be "all consideration of any kind or nature . . . derived by the holder of a state-issued certificate of franchise authority ***from the operation of the cable service provider's or the video service provider's network*** to provide cable service or video service within that city."  Util. § 66.002(6)(A) (emphasis added).  This definition is clear that the only revenues to be taxed are those derived from the operation of the network—indeed, the cable or video service provider's *own* network.  The language of 66.002(6)(C) confirms this: "a provider's network consists ***solely*** of the optical spectrum wavelengths, bandwidth, or other current or future transmission of video programming over wireline facilities . . . as designated by the provider in its franchise."  *Id*. (emphasis added).  Thus, even if Hulu were deemed a holder of a SICFA, it still would not be required to pay any fees because only revenues derived from the physical operation of a network can be taxed.

### III. PLAINTIFF'S ATTEMPT TO TAX THE STREAMING OF VIDEO PROGRAMMING VIA THE INTERNET RESULTS IN DISCRIMINATORY TAXATION AND VIOLATES THE INTERNET TAX FREEDOM ACT.

Plaintiff's attempt to apply a "franchise fee" to Hulu's internet streaming service should also be rejected because it would violate the ITFA. The ITFA provides that "[n]o State . . . may impose . . . discriminatory taxes on electronic commerce," which includes the delivery of services over the internet. 47 U.S.C. § 151 note §§ 1101(a), 1105(3). Plaintiff admits Hulu engages in electronic commerce. Compl. ¶¶ 10, 11, 14, 15.

As a threshold matter, the 5% "fee" Plaintiff seeks is a tax for purposes of the ITFA. Classification as a tax is a matter of federal law and does not depend on how it is labeled in the relevant statute. *See Neinast v. Texas*, 217 F.3d 275, 277 (5th Cir. 2000). Federal law looks to the purpose of the payment and whether its use is restricted in any manner. Payments collected for general revenue-raising purposes that can be used without restriction are considered taxes. *See Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1110-12 (5th Cir. 1998) (classic tax is enacted by the legislature for general revenue-raising purposes); *MCI Commc'n Servs. v. City of Eugene*, 359 Fed. App'x 692 (9th Cir. 2009) (tax prohibitions applied because moneys were "deposited in the [C]ity's general fund, [and] not earmarked for any specific use").[1] By the PURA's express terms, all revenues flow with no restriction on their use to the cities, not the Commission, the state's regulatory agency. *See* Util. § 66.005(a) (holder of a SICFA "shall

---

[1] The same substantive analysis would apply even if state law governed. *See TracFone Wireless, Inc. v. Comm'n on State Emergency Comm'ns*, 397 S.W.3d 173, 175 n.3 (Tex. 2013) (noting that "the Legislature's decisions to label a charge a 'fee' rather than a 'tax' is not binding on this Court"); *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896, 899 (Tex. 1937) (the "principle distinction generally recognized is that when … the primary purpose of the fees provided therein is the raising of revenue, then such fees are in fact … taxes," but "if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes").

pay each municipality in which it provides cable service or video service"); Texas Municipal League, REVENUE MANUAL FOR TEXAS CITIES, https://www.tml.org/DocumentCenter/View/68/Texas-Municipal-League-Revenue-Manual-for-Texas-Cities-PDF ("The quarterly five-percent franchise fee can be spent *in any manner a city council chooses*." (emphasis added)).

Accordingly, ITFA's prohibition against discriminatory taxation applies. A "discriminatory tax" is one imposed on electronic commerce offered over the internet but not imposed on "similar" services offered by means other than the internet. Util. § 1105(2)(A); *see also* 144 Cong. Rec. E1288-03 (June 23, 1998) (statement of Rep. Cox), 144 Cong. Rec. E1289, 1998 WL 391325 ("The property, goods, services, or information need not be identical, but only 'similar.'"). For example, in *Performance Mktg. Ass'n v. Hamer*, 998 N.E.2d 54, 56 (Ill. 2013), the state taxed certain retailers who utilized online marketing but not retailers who utilized traditional, non-electronic marketing. This scheme was found to be discriminatory, violated ITFA, and was invalidated on preemption grounds. *Id.* at 59-60.

Here, Plaintiff claims Hulu must pay the 5% "fee" because Hulu provides video programming services similar to traditional broadcast networks. *See* Compl. ¶ 9 ("Defendants . . . compete with other video service providers, offering video programming that is comparable to that provided by cable companies and television-broadcast stations."). Plaintiff must take this position because the PURA's SICFA and fee requirements do not apply unless Hulu provides programming that is "generally considered comparable to programming provided by, a television broadcast station." Util. § 66.002(9). But the PURA does not impose fees on over-the-air broadcasters and Plaintiff has not collected such fees from them. Moreover, this discrimination against electronic commerce is compounded by the PURA's express exemption from fees for video programming "provided by a commercial mobile service

provider." *Id.* § 66.002(10) (the definition of "video service" expressly does not include services "provided by a commercial mobile service provider").

In other words, a resident of New Boston who signs up for Hulu Live can be charged a 5% fee for using Hulu to watch the KSLA 12 nightly news program over the internet. A resident who watches the exact same video program using "rabbit ears" to capture the over-the-air broadcast signal is not subject to the fee. Neither is a resident who has a cellphone carrier that provides streaming access to the exact same nightly news program. Each scenario involves the same video programming and differs only in the medium through which the service is provided. Whether the transaction is taxed turns on whether the service is provided via the internet, terrestrial signal, or via commercial mobile service. This is precisely the type of discrimination against electronic commerce that the ITFA prohibits.

## CONCLUSION

Hulu willingly pays all appropriate taxes and fees. But Hulu should not be required to pay taxes and fees that are plainly not authorized by statute, nor does the fact Hulu can pass them on to the residents of New Boston make them proper. In addition to the reasons set forth above, Hulu also joins in the arguments by Netflix in its motion to dismiss. For all of these reasons, the Complaint should be dismissed in its entirety without leave to amend.

//

//

October 2, 2020                                    Respectfully submitted,

                                                            By:  */s/ Victor Jih*
                                                               Victor Jih, Lead Attorney *(pro hac vice)*
                                                               California State Bar No. 186515
                                                               vjih@wsgr.com
                                                               John Rafael Perez *(pro hac vice)*
                                                               jrperez@wsgr.com
                                                               Naomi R. Strauss *(pro hac vice)*
                                                               nstrauss@wsgr.com
                                                               **WILSON SONSINI GOODRICH & ROSATI, P.C.**
                                                               633 West Fifth Street, Suite 1550
                                                               Los Angeles, CA 90071-1650
                                                               (323) 210-2900


                                                               Melissa R. Smith
                                                               Texas State Bar No. 24001351
                                                               **GILLAM & SMITH, LLP**
                                                               303 South Washington Avenue
                                                               Marshall, Texas 75670
                                                               (903) 934-8450
                                                               melissa@gillamsmithlaw.com

                                                               **ATTORNEYS FOR DEFENDANT HULU, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 2, 2020 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Victor Jih*
Victor Jih
