**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| CITY OF NEW BOSTON, TEXAS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 5:20-cv-00135-RWS |
| v. | JURY TRIAL DEMANDED |
| NETFLIX, INC. and HULU, LLC, | **ORAL HEARING REQUESTED** |
| Defendants. | |

**DEFENDANT NETFLIX, INC.'S SURREPLY IN SUPPORT OF ITS**
**OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

**Page**

I. PLAINTIFF'S MISCHARACTERIZATION OF THE TEXAS ACT TAINTS ITS CLASS CERTIFICATION MOTION ..........................................................................1

II. PLAINTIFF IGNORES ITS COMPLAINT AND THE RECORD EVIDENCE ...............4

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ......................................................................................................6

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .....................................................................................................................7

*Marcus v. J.C. Penney Co., Inc.*,
   No. 6:13-CV-736-MHS-KNM, 2016 WL 8604331 (E.D. Tex. Aug. 29, 2016) .......................7

*Tex. Coal. of Cities for Util. Issues v. F.C.C.*,
   324 F.3d 802 (5th Cir. 2003) ......................................................................................................4

*Wilson v. Badcock Home Furniture*,
   329 F.R.D. 454 (M.D. Fla. 2018) ...............................................................................................6

**STATUTES**

47 U.S.C. § 541(a)(2) ........................................................................................................................4

Tex. Util. Code
   § 66.002(6)(A) .......................................................................................................................2, 7
   § 66.002(6)(A)(i) ........................................................................................................................2
   § 66.002(6)(C) ............................................................................................................................2
   § 66.002(8) .................................................................................................................................2
   § 66.002(10) ...............................................................................................................................2
   § 66.005(a) ..............................................................................................................................1, 2

**RULES**

Rule 23(b)(2) ................................................................................................................................5, 6

Rule 23(b)(3) ................................................................................................................................5, 6

**OTHER AUTHORITIES**

House Research Organization, Bill Analysis, H.B. 13, 79th Leg., 2d C.S. (Tex. 2005) .................4

S. Rep. No. 98-67 (1983) .................................................................................................................4

Texas Legislative Council, Summary of Enactments, 79th Leg. 1st & 2d C.S. (Tex. 2005) ..........4

U.S. Dep't of Justice, *Voice, Video and Broadband: The Changing Competitive Landscape and Its Impact on Consumers*, at 6-7 (Nov. 2008), http://www.usdoj.gov/atr/public/reports/239284.pdf..................................................................4

Plaintiff ignores the express language of the Texas Act, the allegations of Plaintiff's own Complaint, and the undisputed record facts.  The plain text of the Act, as well as its history and purpose, make clear that the Act only imposes a limited *franchise fee* for the *actual physical occupation* of the public rights-of-way ("ROWs") *within a municipality*, *not* a general *sales tax* regardless of the location or method of streaming Netflix content.  The fee is thus tied to numerous city-specific questions about the provision of "video service" using wireline facilities in the public ROWs in a given municipality.  Those individualized questions preclude certification because they defeat commonality, cohesion, and predominance; require complicated (if not impossible) damages modeling; generate intra-class conflicts; and present manageability problems that make class treatment far from superior.  Plaintiff's motion should be denied.

I.   **PLAINTIFF'S MISCHARACTERIZATION OF THE TEXAS ACT TAINTS ITS CLASS CERTIFICATION MOTION**

Plaintiff's motion is based on an intentional misreading of the Act.  Plaintiff asserts that "[w]hether Defendants are 'video service' providers under the [Act]" is "*a yes or no question*," and that if "*any* subscriber views *any* content via wires or cables located at least in part in public rights-of-way, Netflix is liable for the fee."  That fee, according to Plaintiff, is calculated based on the "subscriber's flat monthly subscription, *not the location or method* . . . of the subscriber's usage." Reply (Dkt. 83) 4, 8.[1]  Plaintiff's words find no basis in the text of the Act.  The Act imposes upon the holder of a state-issued certificate of franchise authority the obligation to "pay *each municipality in which it provides* . . . *video service* a franchise fee . . . ." Tex. Util. Code § 66.005(a).  The Act defines "video service" to mean, in part, "video programming services provided *through wireline facilities* located at least in part *in the public right-of-way*," i.e., through wireline facilities located on or under certain property in which the city has "*an*

---

[1] All emphasis is added unless otherwise noted and capitalized terms are as defined in Netflix's opposition.  Netflix also incorporates the arguments made in Hulu's Surreply.

**NETFLIX'S SURREPLY TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** - Page 1

*interest.*" *Id.* § 66.002(8) & (10).  These provisions mandate threshold inquiries into (1) whether the particular city has "an interest" in specific ROWs and (2) if so, whether any ISPs that *could* deliver Netflix content in fact have wireline facilities in those ROWs.  *See* Opp. (Dkt. 80) 11-13.[2]

If, and only if, these threshold requirements are satisfied, the Act then requires an inquiry into the fee that *might* be owed.  Contrary to Plaintiff's claim (Reply 8), both the "location" *and* the "method" of viewing are relevant to this inquiry.  As for "location" of viewing, the Act assesses a fee on "gross revenues," Tex. Util. Code § 66.005(a), defined as the "consideration . . . derived . . . from the operation of . . . the video service provider's network to *provide* . . . *video service <u>within the municipality</u>*."[3]  *Id.* § 66.002(6)(A).  As for "method" of viewing, gross revenues refer to the "fees charged to subscribers <u>***for***</u> . . . *video service*[.]"  *Id.*  The Act then narrowly defines "video service" as only that programming provided "through wireline facilities located at least in part in the public right-of-way" and not "provided by a commercial mobile service provider."  *Id.* § 66.002(10).  Content that does not meet that definition is *not* video service under the Act and revenues associated with that *non-*video service are not assessed a fee.[4]

Determining whether and to what extent Netflix content is provided over wireline facilities, and not over commercial-mobile facilities, in a particular city requires fact-intensive, city-by-city analysis precisely because—as Plaintiff admits (Reply 15)—Netflix's online streaming service (1) is not tied to a fixed location of use and (2) can be delivered by wired,

---

[2] In reality, Netflix does not provide video service anywhere because, *inter alia*, it does not provide "video programming," and ISPs, rather than Netflix, deliver the content.

[3] Unlike a cable provider or service like AT&T U-Verse or Verizon Fios that lays wires in the public ROWs, Netflix does not have a physical "network" in the public ROWs and thus has no gross revenues.

[4] Plaintiff relies on incomplete language from the Act.  Plaintiff (Reply 15) points to the reference in Section 66.002(6)(A)(i) to "all fees charged to subscribers," but, as noted above, the complete phrase refers to "all fees charged to subscribers ***for*** any and all . . . *video service*."  Plaintiff also cites the reference in Section 66.002(6)(C) to "subscribers within the geographic area within the municipality," but that provision refers to "the transmission of video programming ***over wireline*** directly to subscribers within the geographic area ***within the municipality***."

**NETFLIX'S SURREPLY TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** - **Page 2**

wireless, satellite, and mobile ISPs. *See* Opp. 12-14, 17 n.12. The unrebutted testimony of Netflix's expert establishes, for example, that all Texas cities are served by mobile and satellite ISPs and many are served by fixed wireless ISPs, creating individualized factual questions regarding whether and to what extent wireline facilities in a city's ROWs are being used. Turner Report (Dkt. 80-10) ¶¶ 64-75. Plaintiff is thus wrong to claim that whether "Defendants provide their content through wireline facilities located at least in part in the city's public right-of-way" can be answered in a common way.[5] *See* Reply 13. Indeed, Plaintiff's expert Mr. Malfara admits that these questions will require individualized evaluations of "route maps of [ISPs]" and "logs of permits that were requested in order to construct facilities." Malfara 4/29/21 Tr. (Dkt. 80-16) 109:8-17. The language of the Act, coupled with the nature of Netflix's online streaming service, create these individualized questions and preclude class certification.[6] *See* Opp. 12-14.

Plaintiff thus tries to turn the franchise fee into a general sales tax on the full amount of a Netflix subscription, regardless of where or how a subscriber views content. Reply 8 (claiming fee is "calculated the same way Netflix generates gross revenue—by the subscriber's flat monthly subscription, not the location or method . . . of the subscriber's usage"); *see also id.* at 16. Doing so not only ignores the plain wording of the Act, *supra* 1-2, but it also divorces the Act from its purpose of compensating cities for physical access to the public ROWs to install cable and other wireline systems. The state franchise fee is designed to "effectively compensate[] a municipality for right-of-way provision or other costs," not to impose a sales tax unrelated to

---

[5] Plaintiff contends these questions do not defeat commonality because cities that do not own public ROWs or that do not have wireline facilities "are not members of this putative class," Reply 8, but Plaintiff cannot take advantage of its fail-safe class definition to avoid the highly individualized issues implicated by its suit. If a class were certified, the above questions would still have to be answered in order to ascertain whether Netflix owed fees to any particular city, thereby defeating commonality.

[6] Plaintiff claims that "[r]esolving merits questions is not the purview of class certification motions." Reply 2. If so, certification is not appropriate because the proposed class definition requires a ruling on merits issues. *See* Reply 4 (the proposed class definition turns on a "statutorily defined term").

**NETFLIX'S SURREPLY TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** - **Page 3**

the occupation of the public ROWs. Texas Legislative Council, Summary of Enactments, 79th Leg. 1st & 2d C.S., at 365 (Tex. 2005); *see also* 47 U.S.C. § 541(a)(2) (franchises "authorize the construction of a cable system over public rights-of-way"); *Tex. Coal. of Cities for Util. Issues v. F.C.C.*, 324 F.3d 802, 805-06 (5th Cir. 2003) (franchise fees are "the price paid to rent use of public right-of-ways"); S. Rep. No. 98-67, at 6 (1983) (franchises "authorize[d] [a] cable system to use local streets, rights of way, easements, etc., for erecting poles and stringing the wires"); Perryman Report (Dkt. 80-12) ¶¶ 23-32.[7] Plaintiff's attempt to certify a class based on a misreading of the Act and misunderstanding of its purpose should be denied.

## II. PLAINTIFF IGNORES ITS COMPLAINT AND THE RECORD EVIDENCE

Plaintiff's proposed class is defined as "Texas municipalities in which" Defendants have "provided video service." Compl. (Dkt. 1) ¶ 22. Plaintiff claims each such municipality is entitled to past and future fees from Defendants for "video service in that municipality." *Id.* ¶ 2. Plaintiff asks for a declaration as to whether Defendants "provide video service" "within Plaintiff's and other Class members' geographic areas." *Id.* ¶ 26(a). On the record before this Court, Plaintiff's claims, as alleged, are not appropriate for class certification.

**Commonality & Typicality Are Lacking:** Plaintiff falsely claims Netflix "conceded" that "two questions" were common during a hearing in a *different* case under a *different* statute. Reply 5. Netflix, however, never made any such concession, and consistent with its briefing, Netflix has always maintained that determining whether Netflix's conduct can be enjoined or

---

[7] The focus on physical occupation of the ROWs is undisputed: the Act was part of a bill introduced in response to the entry of communications companies like AT&T and Verizon into the video services market through their fiber-optic networks and sought to encourage investment in *physical* telecommunications infrastructure. House Research Organization, Bill Analysis, H.B. 13, 79th Leg., 2d C.S., at 20 (Tex. 2005) (bill would encourage "[n]ew technologies, such as high-speed fiber to the home and broadband"); U.S. Dep't of Justice, *Voice, Video and Broadband: The Changing Competitive Landscape and Its Impact on Consumers*, at 6-7 (Nov. 2008), http://www.usdoj.gov/atr/public/reports/239284.pdf (discussing Verizon's "FiOS" and AT&T's "U-Verse video services). The Act did *not* focus on internet streaming companies like Netflix that do not occupy the ROWs.

whether Netflix owes past fees requires individualized inquiry into whether wireline facilities are used and whether content is streamed over mobile service. *See* Netflix Opp. to Class Cert. Mot. (Dkt. 61) 8-14, *City of Maple Heights v. Netflix, Inc.*, No. 1:20-cv-01872 (N.D. Ohio). Even if those facts could be established on a classwide basis, Netflix still would not be liable for the fee given its individualized constitutional and notice-based defenses.[8] *See* Opp. 8-9, 16.

**Individualized Damage Issues Defeat Commonality & Certification Under Rule 23(b)(2) & (b)(3).** Plaintiff claims, without any statutory basis, that the fee should be assessed based on the "service addresses" of Netflix's members. *See* Mot. 5, 19. Experts for both Netflix and Plaintiff have explained, however, that "service address" means the address where a service is provided. Malfara 4/29/21 Tr. 99:1-2; Turner Report ¶¶ 51-54. Yet, Plaintiff continues to argue, with no statutory or evidentiary support, that the term refers to a residential address, not where content is actually streamed. Reply 6, 7 n.4, 14-15. Even assuming the truth of that assertion, Netflix undisputedly does not collect any physical addresses for its streaming customers, so even if Plaintiff's theory were correct, calculating retrospective damages would require obtaining the residential addresses for all Netflix members around the world to determine which ones have residential addresses in Texas.[9] Putting aside the extreme burden and privacy invasions that would result, Plaintiff offers no method to obtain that information, instead suggesting off-hand that Netflix could use whitepages.com to identify subscribers' addresses. *Id.* at 7 n.4. But Plaintiff submits no evidence that such a method would accurately identify

---

[8] Plaintiff claims Netflix's defenses apply uniformly to all class members, Reply 12, but those defenses require consideration of each particular city's collection and allocation of the fee (for the constitutional defenses) and each city's actual knowledge of Netflix's operations in that city (for the notice-based defenses). These defenses thus undermine typicality, commonality, cohesion, and predominance.

[9] Plaintiff points to Netflix's Privacy Policy, which states that Netflix may collect "address *or postal code*." Reply 6. That is consistent with the undisputed evidence that Netflix does *not* collect physical addresses for its streaming customers—as opposed to its DVD customers—and collects billing zip codes only for some streaming customers. Long Decl. (Dkt. 80-5) ¶¶ 15-18 n.1.

subscribers' physical addresses.  *Cf. Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 457 (M.D. Fla. 2018) (private reverse directory databases are "often inaccurate and incomplete"). And even if such a methodology could work, the process would be neither "formulaic" nor "incidental," as Plaintiff claims.  Reply 24.  Indeed, Plaintiff itself acknowledges that damages will require examining "Defendants' records and data, and expert testimony regarding population data, ISPs, zip codes and addresses." *Id.* at 25.[10]  That fact-intensive analysis will be required for each city, and such "complex individualized determinations" preclude (b)(2) and (b)(3) certification. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998).

Calculating damages would likewise require determining the percentage of viewers watching content using a wired versus non-wired (*e.g.*, satellite, wireless) ISP (and in what proportion), as well as the percentage of Netflix viewers in each city streaming content over a mobile connection (and in what proportion). Those questions would need to be answered for each quarterly period for which Plaintiff seeks fees, by tracing the location of wireline facilities and viewing habits in each city *back in time* over the course of *years*.  *See* Perryman Report ¶¶ 53-66.  A manageable method to conduct these inquiries to calculate damages backwards and going forward on a classwide basis does not exist, nor does Plaintiff propose one.

Plaintiff's proposed damages model also is not consistent with its theory of liability. Reply 24.  Plaintiff's Complaint seeks a fee on gross revenues "*derived from providing . . . video service in those municipalities*," Compl. ¶¶ 19, 32, but Plaintiff now claims damages should be 5% of "the subscriber's flat monthly subscription," regardless of whether or not those fees *relate to* video service or *relate to* the ROWs of a particular municipality.  Reply 8, 26.  The Supreme Court has unequivocally rebuked Plaintiff's effort: Plaintiff must prove "that damages are

---

[10] Plaintiff faults Netflix for "nonfeasance" and "ignor[ing] the statute," Reply 25, but Netflix has been operating since 2007, and until this lawsuit was filed in 2020, no Texas city gave Netflix any indication it believed the Act applied to online streaming services like Netflix.  Mirkovski Decl. (Dkt. 80-9) ¶ 3.

susceptible of measurement across the entire class for purposes of Rule 23(b)(3)"—and it must do so by measuring **"*only those damages attributable*"** to its liability theory. *Comcast Corp. v. Behrend*, 569 U.S. 27, 28, 35 (2013).[11] Because Plaintiff does not propose a method to measure damages attributable to its theory of liability, class certification is not appropriate.

**Conflicts Among the Class Defeat Adequacy.** Plaintiff does not deny that its damages model takes franchise fees away from cities with more people who view video content in those cities (*e.g.*, tourists, business travelers, and students) and gives them to cities in which viewers reside but do not view content. Reply 14-16. Plaintiff insists this inequality is created by the language of the Act itself. *Id.* But the Act does not propose that the franchise fee be assessed based on "the subscriber's flat monthly subscription," regardless of where content is viewed. *Compare* Reply 8 *with* Tex. Util. Code § 66.002(6)(A). Plaintiff invents that damages model, and the undisputed record establishes that Plaintiff's model creates intra-class conflicts that defeat adequacy and preclude class certification. *See* David Report (Dkt. 80-11) ¶¶ 60-85. Plaintiff also concedes its suit will force all cities in Texas to impose its version of the franchise fee on Netflix, Reply 22-23, even though certain cities may not agree that such fees apply to Netflix. Although Plaintiff claims that cities "do not have any authority to 'disagree' with or disregard" the Act, Reply 22, Plaintiff does not explain why it should be permitted to impose its own novel interpretation of the Act on cities throughout Texas that may disagree with it. Class certification is wholly improper in the face of these conflicts of interest. *See* Opp. 6-7.

---

[11] Plaintiff suggests Defendants merely disagree with its methodology, citing *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-736-MHS-KNM, 2016 WL 8604331 (E.D. Tex. Aug. 29, 2016), but in *Marcus*, the proposed damages model "measure[d] damages attributable to [Plaintiffs'] single theory of liability." *Id.* at *9. The same is not true here—Plaintiff's model sweeps in "damages" not attributable to Defendants' alleged violation of the Act.

<u>**NETFLIX'S SURREPLY TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**</u> - **Page 7**

Respectfully submitted,

*/s/ Jennifer H. Doan*

Jennifer H. Doan
Texas Bar No. 08809050
Cole Alan Riddell
Texas Bar No. 24105423
HALTOM & DOAN
6500 Summerhill Road
Crown Executive Center Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: criddell@haltomdoan.com

**LATHAM & WATKINS LLP**
Mary Rose Alexander
California Bar No. 143899
Robert C. Collins III (pro hac vice)
Illinois Bar No. 6304674
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: mary.rose.alexander@lw.com
Email: robert.collins@lw.com

Jean A. Pawlow (pro hac vice)
D.C. Bar No. 421782
555 Eleventh Street, N.W. Suite 1000
Washington, DC 20004
Telephone: (202) 637-3331
Facsimile: (202) 637-2201
Email: jean.pawlow@lw.com

**ATTORNEYS FOR DEFENDANT NETFLIX, INC.**

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on August 16, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                */s/ Jennifer H. Doan*
                Jennifer H. Doan