IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| CITY OF NEW BOSTON, TEXAS, § | |
| § | |
| Plaintiff, § | CIVIL ACTION NO.  5:20-CV-00135-RWS |
| § | |
| v. § | |
| § | |
| NETFLIX, INC., HULU, LLC, § | |
| § | |
| Defendants. § | |

**ORDER**

Before the Court is Defendant Netflix, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 19) and Defendant Hulu, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 21).  For the reasons set forth below, the motions are **GRANTED**.

**BACKGROUND**

Plaintiff City of New Boston, Texas, filed a class action suit for violation of Texas Utilities Code § 66.005(a) on behalf of all Texas municipalities in which one or both Defendants Netflix, Inc. and Hulu, LLC (collectively, "Defendants") provide video services.  *See* Docket No. 1.  The Texas Video Services Providers Act sets up a regime for issuing state-sanctioned franchises for the provision of cable or video service through the Public Utility Commission ("PUC").  TEX. UTIL. CODE ANN. § 66.001.  Such a franchise authorizes the construction and operation of a cable or video services network in public rights-of-way.  *Id.* § 66.002(5).  In exchange, each municipality in which a provider operates receives a five percent franchise fee based on the provider's gross revenue.  *Id.* § 66.005.  Plaintiff alleges Defendants are video service providers and derive gross revenues from providing these video services, as defined by the statute.  *See* Docket No. 1 ¶ 32.

Plaintiff further alleges that Defendants are required to pay each municipality in which Defendants provide video services a franchise fee of five percent of their gross revenues derived from their operations in that municipality under Texas Utilities Code § 66.005(a). *See id.* ¶ 33.

Defendants move to dismiss this suit for failure to state a claim upon which relief can be granted. *See* Docket Nos. 19, 21; FED. R. CIV. P. 12(b)(6). Defendants contend that Texas Utilities Code § 66 does not apply to them because they are not holders of a state-issued certificate of franchise authority.[1] Docket No. 21 at 6–8.

## LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Procedure 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court must then decide whether those facts state a claim that is plausible on its face. *Id.* at 219. The complaint need not contain detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that he is plausibly entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79, 684 (2009) (discussing *Twombly* and applying *Twombly* generally to civil actions pleaded under Rule 8). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

---

[1] Netflix also contends that it does not provide "video programming" as defined by § 66.002(9). *See* Docket No. 19 at 8–9. Both Defendants further argue that the statute does not apply to them because they do not operate video service networks in public rights-of-way and because there are several federal defenses to the statute, including that it is inconsistent or preempted by the Federal Communications Act of 1934; that it violates the Tax Freedom Act; that it violates the First Amendment; and that it implicates the primary jurisdiction doctrine. *See* Docket Nos. 19, 21.

## ANALYSIS

While the parties extensively dispute the application of the video service provider provision of Texas Utilities Code § 66, this is a case about franchise fees. The statute's specific section on franchise fees states:

> (a) ***The holder of a state-issued certificate of franchise authority*** shall pay each municipality in which it provides cable service or video service a franchise fee of five percent ***based upon the definition of gross revenues*** as set forth in this chapter . . . .

TEX. UTIL. CODE ANN. § 66.005(a) (emphasis added). The statute defines gross revenue as:

> (6)(A) "Gross revenues" means all consideration of any kind or nature including without limitation cash, credits, property, and in-kind contributions (services or goods) ***derived by the holder of a state-issued certificate of franchise authority*** from the operation of the cable service provider's or the video service provider's network to provide cable service or video service within the municipality. Gross revenue shall include ***all consideration paid to the holder of a state-issued certificate of franchise authority*** and its affiliates (to the extent either is acting as a provider of a cable service or video service as authorized by this chapter), which shall include but not be limited to the following . . . .

*Id.* § 66.002 (emphasis added).

The Texas Legislature's language is clear: to incur a franchise fee, the provider must be "the holder of a state-issued certificate of franchise authority."[2] *Id.* §§ 66.002(6)(A), 66.005(a). In drafting the statute, the legislature used different language for a holder of a state-issued certificate of franchise authority and the separate concept of a "video service provider."[3] *See id.*

---

[2] The statute further supports this interpretation by recognizing that a state-issued certificate of franchise authority is not the only way for a video service provider to obtain authorization to construct or operate its networks in public rights-of-way. *See id.* § 66.004(a). Incumbent providers that negotiated franchise agreements with individual cities may rely on municipal authorization until those agreements expire and do not need, nor are eligible for, a state-issued certificate of franchise authority. *Id*. Moreover, such incumbent providers do not owe the five percent franchise fee under § 66.005.

[3] Plaintiff contends that whether Defendants qualify as video service providers is the operative term for the Court to decide in applying § 66 at this stage of the proceeding. Docket No. 61 at 43:18–21. But the Court finds that whether Defendants are holders of a state-issued certificate of franchise authority is a prerequisite requirement to applying § 66.005(a), for the reasons set forth in this order.

§ 66.002 (11). It is not the province of this Court, or courts anywhere, to read words out of a statute. *See, e.g.*, *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017) ("Separation of powers demands that judge-interpreters be sticklers. Sticklers about not rewriting statutes under the guise of interpreting them. Sticklers about not supplanting our wisdom for that of the Legislature. Sticklers about a constitutional design that confers the power to adjudicate but not to legislate."). And giving effect to the language of the legislature is especially important where the pertinent language appears throughout the entire statute, as it does here. *See KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 184 (Tex. 2019) (citing *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016) ("[W]e consider the statute as a whole, giving effect to each provision so that none is rendered meaningless or mere surplusage.")) ("Our interpretation of a statute should 'giv[e] effect to every word, clause, and sentence.' "). If the Court were to modify the concept of a holder of a state-issued certificate of franchise authority in § 66.005, it would impact not only that instance in the statute, but every instance that phrase appears,[4] introducing possible inconsistencies and ambiguities.

Plaintiff has not pled and does not dispute that neither Defendant is a holder of a state-issued certificate of franchise authority. Plaintiff argues that this fact is irrelevant because Plaintiff pled a declaratory judgment claim asking the Court to determine that Defendants "were required to file an application with the [PUC] for a state-issued certificate of franchise authority"; that "Defendants are required to pay Plaintiff and each of the other Class members a franchise fee of 5% of their gross revenues derived from their operations in each such municipality"; and that Defendants have violated the statute by not paying those fees in the past. Docket No. 29 at 5–6;

---

[4] The phrase "holder of a state-issued certificate of franchise authority" appears more than 70 times in Texas Utilities Code § 66.

Docket No. 1 ¶ 39.  Plaintiff thus effectively asks the Court to declare that Defendants are, and should always have been, holders of a state-issued certificate of franchise authority.

The statute, however, does not grant such authority to the courts.  The statute defines a franchise as:

> (5) "Franchise" means an initial authorization, or renewal of an authorization, ***issued by a franchising authority***, regardless of whether the authorization is designated as a franchise, permit, license, resolution, contract, certificate, agreement, or otherwise, that authorizes the construction and operation of a cable or video services network in the public rights-of-way. . . .

TEX. UTIL. CODE ANN. § 66.002(5) (emphasis added).  Section 66.001, titled Franchising Authority, states: "[t]he commission shall be designated as the franchising authority for a state-issued franchise for the provision of cable service or video service."  *Id.* § 66.001.  This unambiguously grants authority to the PUC to issue state franchises for the provision of cable or video services.  This authority is not qualified in any way, nor does the statute carve out any basis upon which the Court may also act as a franchising authority.

And this grant of power to one body in the PUC to issue certificates of franchise aligns with the purpose of the statute.  Prior to 2005, providers were required to negotiate separate authorization from each municipality served by a provider's network.  But in 2005, the legislature established a statewide franchise scheme for entities seeking to construct and operate cable and video services networks.  *See id.*; *id.* § 11.002(a) ("This title is enacted to protect the public interest inherent in the rates and services of public utilities.  The purpose of this title is to establish a comprehensive and adequate regulatory system for public utilities . . . .").  The legislature added Chapter 66 to the Public Utility Regulatory Act, entrusting the PUC with overseeing this new regime.  *See id.* § 11.002(c) ("It is the purpose of this title to grant the Public Utility Commission of Texas authority to make and enforce rules necessary to protect customers of telecommunications

and electric services consistent with the public interest."). The legislature's changes thus relieved providers of having to negotiate with each municipality and vested the public authority to grant franchises in one entity—the PUC.

The fact that Plaintiff sought declaratory relief does not save its claim. The Supreme Court has explained that "the Declaratory Judgments Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citation omitted); *see also Reid v. Aransas Cty.*, 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011) ("[A] plaintiff cannot use the Declaratory Judgment Act to create a private right of action where none exists."). As explained above, under the statute, the Court does not have the authority to issue the certificates of franchise underpinning this case for franchise fees.

Plaintiff's other arguments are also unavailing. Plaintiff contends that if the failure to obtain the required state-issued certificate of franchise authority excuses the obligation to pay franchise fees, a party can deliberately not comply and be rewarded with immunity and dismissal of any lawsuit by a municipality. Docket No. 29 at 6. That Plaintiff's desired avenue of enforcement is not available, however, does not mean that no ability to enforce compliance with the statute exists. The question is which entity has the authority to decide who should be holders of state-issued certificates of franchise authority: individual municipalities or the state. The statute answers this query. It centralizes the authority to grant a certificate of franchise to a provider in the PUC and removed negotiation on a municipality-by-municipality basis for such franchises. The statute did not reserve to individual municipalities any authority to declare a provider a holder of a state-issued certificate of franchise authority.

Likewise, this Court cannot bypass the state's authority to declare who holds a state-issued certificate of franchise authority for municipalities. The language inserted into the statute about the holder of a certificate of franchise authority demarcates the line of authority between municipalities and the state. The statute grants municipalities limited enforcement authority, which is restricted to the authority to regulate holders of state-issued certificates of franchise authority. *See* TEX. UTIL. CODE ANN. § 66.011 (Municipal Police Power; Other Authority), § 66.013 (Municipal Authority) (referring to municipalities' powers to regulate only vis-à-vis holders of state-issued certificates of franchise authority). But before a certificate of franchise is issued, the PUC, through the attorney general, is the body to determine who should be a holder of such a certificate and to enforce compliance if a party improperly fails to file for a certificate. *See id.* § 15.021(a) ("The attorney general, on the request of the commission, shall apply in the name of the commission for a court order under Subsection (b) if the commission determines that a public utility or other person is: (1) engaging in or about to engage in an act that violates this title or an order or rule of the commission entered or adopted under this title; or (2) failing to comply with the requirements of this title or a rule or order of the commission."). To allow a municipal plaintiff to bypass the PUC would undermine the regulatory scheme set forth in the statute and its overall purpose to centralize the issuance of franchises in one statewide body.[5]

Moreover, to allow such a divergence from the statutory scheme would affect enforcement decisions. The PUC has enforcement discretion, as well as options in imposing penalties for noncompliance. *See id.* § 15.023 (a). The statute gives the PUC an array of possible remedies that

---

[5] Section 66.003 requires an "entity or person seeking to provide cable service or video service in this state shall file an application for a state-issued certificate of franchise authority with the [PUC]." TEX. UTIL. CODE ANN. § 66.003(a). If Plaintiff believes that Defendants are not acting in compliance with that rule, Plaintiff may file a formal complaint with the PUC. 16 TEX. ADMIN. CODE § 22.242 (PUC, Complaints).

it may seek, including issuing a penalty, seeking disgorgement of all excess revenue or entering a voluntary mitigation plan.  *See id.* § 15.023.

Plaintiff also contends that dismissal on these grounds would nullify the specific grant of jurisdiction to the courts in the Texas Public Utility Code to hear disputes on compensation. Docket No. 29 at 5 (quoting TEX. UTIL. CODE ANN. § 66.005(b) ("A municipality may, in the event of a dispute concerning compensation under this section, bring an action in a court of competent jurisdiction.")).  To be clear, Plaintiff is not without a remedy here, as has been described above. But Plaintiff goes further, however, arguing that the need for a judicial forum is underscored by the limits on the PUC's remedial authority, as it "does not have the power to remedy past wrongs." *Id.* at 6 (quoting *Penny v. Southwestern Bell Tel. Co.*, 906 F.2d 183, 187 (5th Cir. 1990)).  But the language Plaintiff relies on in § 66.005(b) is plainly limited by the phrase "a dispute concerning compensation under this section," *i.e.*, the section on franchise fees.[6]  TEX. UTIL. CODE ANN. § 66.005(b).  And § 66.005 is limited to what a holder of a state-issued certificate of franchise authority shall pay a municipality. *Id.* § 66.005(a).  In other words, a municipality's right to bring an action in court is limited to actions against holders of a state-issued certificate of franchise authority.  This reserves the question of who must obtain a state-issued certificate of franchise authority to the PUC while limiting judicial recourse by a municipality to disputes over the amount of compensation against providers who have already obtained a state-issued certificate of franchise authority.  *See supra* note 5.  And Plaintiff's reliance on *Penny* does not suggest otherwise, as Defendants must be holders of state-issued certificates of franchise authority, and thus subject to the statute, before a court can consider whether past damages are warranted.  This all accords with

---

[6] The same language is used in other sections of statute to provide for judicial authority over those specific sections; for example, § 66.009 (Public, Educational, and Government Access Channels) also gives a grant of jurisdiction to the courts to "enforce requirements under this section."  TEX. UTIL. CODE ANN. § 66.009(i).

§ 66.015, titled Compliance, which allows courts to "order the holders of a state-issued certificate of franchise authority. . . to cure such noncompliance" with Chapter 66.  *Id.* § 66.015(a).

Under the language of the Texas statute, before the Court can decide whether a party owes franchise fees, that party must hold a certificate of franchise authority.  Plaintiff has not pled that Defendants hold such certificates.  Thus, as pled, Plaintiff has not stated a claim upon which relief can be granted pursuant to the Texas Utilities Code § 66.005(a).

The parties make other arguments concerning requirements for the statute to apply, the meaning and application of other definitions and regarding various federal defenses.  But because Plaintiff has not cleared this initial requirement, the Court will not resolve those other arguments at this time.

Accordingly, the Court is of the opinion that Defendants' motions to dismiss under 12(b)(6) (Docket Nos. 19, 21) should be **GRANTED**.  It is therefore

**ORDERED** that Plaintiff's Complaint (Docket No. 1) is **DISMISSED WITHOUT PREJUDICE** subject to refiling should the Defendants become holders of state-issued certificates of franchise authority.

**So ORDERED and SIGNED this 30th day of September, 2021.**

*[Signature: Robert W. Schroeder III]*

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE